34 F.3d 1148
 147 L.R.R.M. (BNA) 2176, 128 Lab.Cas. P 11,167
 Socorro CRUZ; Agripina Torres; Delza Perez; Leonie
Abellard; Marie Lucienne Jacob; Maria Quintero;
Carmen Febles; Elizabeth Martinez,
Plaintiffs-Appellees-Cross-Appellants,
Milagros Colon; Erlinda Sampson; Pablo Castro; Gladys
Gonzalez; Julio Colon; Marisol Quintero Delarra,
Plaintiffs,
v.
LOCAL UNION NUMBER 3 OF the INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS, Defendant-Appellant-Cross-Appellee.
 Nos. 1065, 1066, Dockets 93-7830, 93-7908.
 United States Court of Appeals,
Second Circuit.
 Argued March 2, 1994.
Decided Aug. 25, 1994.
 
 Herbert Eisenberg, New York City (Robert B. Davis, Davis & Eisenberg, of counsel), for plaintiffs-appellees-cross-appellants.
 Norman Rothfeld, New York City, for defendant-appellant-cross-appellee.
 Valerie A. Voorhees, New York City, for amicus curiae National Employment Lawyers' Association/New York.
 Before KEARSE, PIERCE and LEVAL, Circuit Judges.
 PIERCE, Circuit Judge:
 On July 12, 1993, an order was filed in the United States District Court for the Eastern District of New York (Arthur D. Spatt, Judge ), 150 F.R.D. 29, which (i) vacated a jury award of $25,969.86,[1] and awarded nominal damages of one dollar each to eight of fourteen plaintiffs who had alleged that Local Union Number 3 of the International Brotherhood of Electrical Workers ("Local Union No. 3") breached its duty of fair representation; and (ii) awarded attorneys fees totalling $47,250 to plaintiffs' attorneys. The district court also awarded costs of $1,177.15. Local Union No. 3 now appeals from, inter alia, both the nominal damage awards and the awards for attorneys' fees. The eight prevailing plaintiffs appeal with respect to, inter alia, the reduction of the jury awards, and the amount of attorneys' fees awarded to their attorneys. Affirmed in part; reversed in part; and remanded.
 
 BACKGROUND
 
 1
 In March, 1990, Robert Abbey, Inc. ("Abbey"), a lamp manufacturer with plants located in Brooklyn, New York, and North Carolina, determined to close its Brooklyn plant, which was unionized, and move most of its equipment to its non-unionized plant in North Carolina. Prior to that decision, in early 1989, Abbey began laying off its unionized employees in the Brooklyn plant and by the end of that year their number was reduced from over 150 to fewer than 50. The plant closed on July 2, 1990. The unionized employees at the Brooklyn plant were all members of a collective bargaining unit whose exclusive representative was Local Union No. 3.
 
 
 2
 On December 19, 1989, an action was commenced in the district court against Local Union No. 3 by several of Abbey's unionized employees, alleging breach of the duty of fair representation by Local Union No. 3, in violation of section 9(a) of the National Labor Relations Act ("NLRA"), 29 U.S.C. Sec. 159(a).[2] The unionized employees included the employer, Abbey, in their action claiming: (1) violation of the Worker Adjustment and Retraining Notification Act of 1988 ("WARN"),[3] 29 U.S.C. Secs. 2101-2109; and (2) that Abbey laid-off senior employees before junior employees, in violation of the seniority clause of the collective bargaining agreement ("CBA") governing the terms and conditions of their employment.[4]
 
 
 3
 Local Union No. 3 and Abbey moved to dismiss the action in January, 1990. Thereafter the plaintiffs moved, on March 19, 1990, "for an order certifying that this action may be maintained as a class action." On April 10, 1990, this motion was dismissed without prejudice to renew. On June 14, 1990, the district court dismissed the plaintiffs' claim that Local Union No. 3 violated its duty of fair representation by failing to inform them or to challenge Abbey with regard to the plant closing and/or mass lay-offs. Accordingly, with respect to Local Union No. 3, only the issue of whether there had been a breach of the duty of fair representation in failing to respond to the employees' seniority grievances remained in the suit before the district court.
 
 
 4
 On February 28, 1991, the plaintiffs, inter alia, renewed their motion to certify the class, and moved to consolidate the action against Abbey and Local Union No. 3 with a second action they had commenced against the John Doe Company (a/k/a Robert Abbey, Inc. of North Carolina) and Martin Abbey, individually and as vice-president of Abbey. These requests were granted by the district court on June 17, 1991.
 
 
 5
 On March 17, 1993, Local Union No. 3 moved for summary judgment. The district court denied this motion on April 5, 1993. Thereafter, on April 30, 1993, the district court dismissed the action against Abbey and John Doe Co. pursuant to a stipulation of settlement between the plaintiffs and Abbey, and John Doe Co. The plaintiffs specifically reserved "any and all claims in the litigation still pending against Local Union [No.] 3."
 
 
 6
 The jury trial against Local Union No. 3 began April 26, 1993, and concluded May 7, 1993. The district court decertified the class of plaintiffs on April 28, 1993, leaving the claims of, inter alia, the fourteen plaintiffs named herein to be tried before the jury.[5] Several of the plaintiffs testified as to the terms of their employment, their wages, their respective layoffs, their efforts to secure employment following their lay-offs, whether they were recalled, and their receipt of unemployment compensation. Febles, Jacob, Martinez, Perez, Abellard, Quintero, and Torres testified that they verbally complained about their non-seniority lay-offs to Bartolo Albino, the union shop steward for Local Union No. 3 at Abbey. They testified that Albino told them he could do nothing for them. Febles, Abellard, and Torres testified that they complained to Albino that they were senior in years of service to other employees who were not laid-off in their department. Two plaintiffs--Martinez and Quintero--gave Albino the names of less senior employees in their department who had not been laid-off. Albino, they stated, offered no help, and told one plaintiff, Jacob, who had complained of being laid-off despite seventeen years of service, to speak to Martin Abbey, the company's vice-president.
 
 
 7
 Abellard testified that she went to the union office and verbally complained about her non-seniority lay-off to Felix Crespo, the business representative of Local Union No. 3 responsible for administration of the CBA at the Brooklyn plant. The record evidence reveals that prior to the fall of 1989 Crespo had access to the union's seniority lists of Abbey's employees and had investigated seniority grievances. Crespo told Abellard to fill out job applications and he would get back to her--he never did. The record also reveals that Abellard had worked for Abbey for over twenty years.
 
 
 8
 The evidence further reveals the following: With regard to Torres' lay-off, at the time of her lay-off in October of 1989, she had worked in Abbey's Shade Department for over nineteen years; she complained of her lay-off to Albino, but she received no response; she was unsuccessful in attempting to speak to Crespo at the union office; thereafter, she applied for unemployment compensation.
 
 
 9
 Perez complained to both Albino and Crespo about her lay-off--neither was responsive, and Crespo left the office stating that he did not "have any time" to respond to her grievances. Perez was laid-off on September 22, 1989; then she found employment "near the end of 1989," which apparently lasted until her January 22, 1990 recall to Abbey.
 
 
 10
 Finally, Cruz, along with Sampson, Perez, Colon, and others, complained to Crespo about their lay-offs. Cruz testified that, rather than advise them about their seniority rights and available grievance procedures, Crespo told her and the others to talk with Albino and their respective lawyers.
 
 
 11
 Thus, there was evidence that Albino did not aid the plaintiffs with respect to their seniority complaints, nor did Crespo discuss seniority rights with the plaintiffs, although he was responsible for administering the CBA, and had access to Abbey's seniority lists.
 
 
 12
 Martin Abbey, the former vice-president of Abbey, testified to the following at the trial. He supervised the operation of Abbey's factory, and it was customary for Albino and Crespo to speak with him when problems arose in order to resolve them. He testified that whenever an Abbey employee was laid-off, the information was provided to both Albino and Crespo. When the decision was made to close the Brooklyn plant in March 1990, Crespo was informed.
 
 
 13
 Martin Abbey also testified regarding employees who were retained although they lacked seniority. Four employees--Frantz Benoit, Genaro Crespo, Palmira Romani, and Rene Ramirez--were retained in the decoration department because, he stated, they possessed skills which the plaintiffs lacked, or performed work the plaintiffs could not perform; another Abbey employee, Carlos DeLeon, was retained despite his lower seniority because he ran the shade department.
 
 
 14
 Local Union No. 3 moved to dismiss, or, in the alternative, for a directed verdict, at the close of the plaintiff's case, claiming that the plaintiffs had (a) failed to present adequate grievances to the union, and (b) failed to exhaust their intra-union remedies. The district court denied this motion, ruling that further action by the plaintiffs would have been "futile." Thus, the case was submitted to the jury to determine whether the seniority provisions of the CBA were violated, and whether Local Union No. 3 violated its duty of fair representation to the plaintiffs. The jury was instructed that if it found in favor of any plaintiff, the amount of economic injury was to be calculated and apportioned between Abbey and Local Union No. 3, deducting earnings from other sources. The jury was also charged that if it could not determine monetary damages with reasonable certainty, then nominal damages of one dollar each should be awarded to the plaintiffs.
 
 
 15
 On May 7, 1993, the jury rendered a verdict in favor of the plaintiffs, finding that the employer had violated the seniority clause of the CBA with regard to eight of the fourteen former Abbey unionized employees: Socorro Cruz, Agripina Torres, Delza Perez, Leonie Abellard, Marie Lucienne Jacob, Maria Quintero, Carmen Febles, and Elizabeth Martinez (hereinafter the "prevailing employees"). The jury also found that Local Union No. 3 had breached its duty of fair representation to the prevailing employees by failing to prosecute the seniority claims. The jury determined that the union was liable for 90% of the damages suffered by Febles. The jury further determined that the union was responsible for 100% of the damages suffered by the remaining seven employees. Finally, the jury awarded a total of $25,969.86 in backpay to the prevailing employees.[6]
 
 
 16
 Local Union No. 3 moved to set aside the jury verdicts as to both liability and damages, pursuant to Fed.R.Civ.P. 50. In a Memorandum Decision and Order dated July 12, 1993, the district court: (1) denied Local Union No. 3's motion to dismiss as to liability; (2) vacated the jury awards to the prevailing employees and awarded them nominal damages of one dollar each; (3) awarded attorneys' fees to the plaintiffs' attorneys totalling $47,250, of $127,756.25 requested; and (4) awarded costs totalling $1,177.15, of $3,631.49 requested. The prevailing employees' application for prejudgment interest was denied. Local Union No. 3 appeals from that portion of the July 12 order which (i) denied judgment as a matter of law as to the jury's liability verdicts; (ii) awarded attorneys fees; and (iii) awarded nominal damages to the prevailing plaintiffs. The union also appeals from the district court's ruling that the plaintiffs were not required to exhaust intra-union remedies. The prevailing employees cross-appeal from the order with regard to the vacating of the jury awards, the reduction of attorneys fees and expenses and the failure to grant pre-judgment interest.
 
 DISCUSSION
 A. Duty of Fair Representation
 
 17
 The jury found, and the district court upheld, that Local Union No. 3 had breached its duty of fair representation to the prevailing employees. Local Union No. 3 asserts upon appeal that the district court's failure to set aside the jury verdicts as to liability was an abuse of discretion because the prevailing employees failed to present evidence as to: (1) "which employee or employees ... should have been laid[-]off prior to him or her;" (2) whether they "possessed equal skill and ability and were performing the same type of work in the same Department" as the employees with less seniority who were retained; and (3) whether the retained employees with less seniority possessed " 'general all-around skill and ability,' " and were "being retained for that reason and not pursuant to a Company low-wage policy."
 
 
 18
 We find the union's arguments unpersuasive. The duty of a union to fairly represent the interests of its bargaining unit employees is inherent in its status as the exclusive bargaining representative. Vaca v. Sipes, 386 U.S. 171, 177, 87 S.Ct. 903, 909-10, 17 L.Ed.2d 842 (1967) ("[T]he exclusive agent's statutory authority to represent all members of a designated unit includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct."). In Air Line Pilots Ass'n, Int'l v. O'Neill, 499 U.S. 65, 111 S.Ct. 1127, 113 L.Ed.2d 51 (1991), the Supreme Court stated that "[t]he duty of fair representation is ... akin to the duty owed by other fiduciaries to their beneficiaries." Id. at 74, 111 S.Ct. at 1133. This Court, when addressing the issue of the duty of fair representation, has stated that
 
 
 19
 arbitrary conduct amounting to a breach is not limited to intentional conduct by union officials but may include acts of omission which, while not calculated to harm union members, "may be so egregious, so far short of minimum standards of fairness to the employee and so unrelated to legitimate union interests as to be arbitrary."
 
 
 20
 NLRB v. Local 282, Int'l Bhd. of Teamsters, 740 F.2d 141, 147 (2d Cir.1984) (quoting Robesky v. Qantas Empire Airways, Ltd., 573 F.2d 1082, 1090 (9th Cir.1978)).
 
 
 21
 Herein, both Albino and Crespo received verbal complaints from the prevailing employees, yet the jury apparently concluded that neither undertook to investigate the validity of the complaints. Given the fact that Crespo had access to the seniority information at the plant, it is disingenuous to argue, as Local Union No. 3 does here, that the employees had the responsibility of naming other employees with less seniority. In fact, under the terms of the CBA, there is no requirement that union members make a complaint in writing, or specifically name other employees with less seniority than themselves.
 
 
 22
 Included in the union's duty of fair representation "is the fair and prompt consideration and, if dictated by controlling legal standards, processing on behalf of employees of their claims under contract dispute resolution procedures," Ames v. Westinghouse Elec. Corp., 864 F.2d 289, 293 (3d Cir.1988), although the duty of fair representation is not breached where the union fails to process a meritless grievance, engages in mere negligent conduct, or fails to process a grievance due to error in evaluating the merits of the grievance. Ryan v. New York Newspaper Printing, 590 F.2d 451, 455 (2d Cir.1979) ("[A]rbitrary or bad-faith conduct ... or substantial evidence of fraud, deceitful action or dishonest conduct ... is required to show a breach of the duty of fair representation.") (internal quotation marks and citations omitted); accord Zuniga v. United Can Co., 812 F.2d 443, 451 (9th Cir.1987) (same). Here, the evidence supports the jury's apparent determination that Local Union No. 3 failed, arbitrarily, to pursue the plaintiffs' grievances. Thus, Local Union No. 3's appeal from the determinations that (a) valid grievances had been filed by the prevailing employees, and (b) that the duty of fair representation had been breached, must fail.
 
 B. Exhaustion of Remedies
 
 23
 Local Union No. 3 challenges the district court's ruling that it would have been "futile" to require the prevailing plaintiffs to exhaust internal union remedies. In Clayton v. United Auto. Workers, 451 U.S. 679, 693, 101 S.Ct. 2088, 2097, 68 L.Ed.2d 538 (1981), the Supreme Court held that exhaustion of intra-union remedies is not required when an intra-union procedure cannot provide the remedy sought under the LMRA. District courts have discretion as to whether or not to require exhaustion of internal union procedures, based upon: (i) "whether union officials are so hostile to the employee" as to eliminate the chance of a fair hearing; (ii) the adequacy of the internal procedures; or (iii) whether exhaustion would unreasonably delay the opportunity to obtain a judicial hearing on the merits of the employee's claim. Id. at 689, 101 S.Ct. at 2095. Here, Local Union No. 3 falls within the second Clayton factor--there was no evidence presented that Local Union No. 3 informed any of the prevailing employees of any internal remedial process. Indeed, there is no process or procedure described in the CBA's seniority clause to instruct an employee as to the means to be employed to redress a grievance. There was testimony at the trial that Albino and Crespo--the union representatives--failed to inform the prevailing employees of formal redress procedures, and also failed to respond to their grievances regarding seniority. Thus, it was reasonable for the district court to determine that further action on the part of the prevailing employees would have been futile. See id.; see also Zuniga, 812 F.2d at 446-47 (where employee presented his grievance to the union, and the union declined to process the grievance, the district court held that, given timing limitations, further action on part of employee would be futile). We conclude that the district court did not err in ruling that further actions by the employees vis-a-vis the union would have been futile.
 
 C. Local Union No. 3's Rule 50 Motion
 
 24
 The prevailing plaintiffs claim upon cross-appeal that Local Union No. 3 failed to meet the procedural requirements of Fed.R.Civ.P. 50. Rule 50 provides:
 
 
 25
 [i]f during a trial by jury a party has been fully heard with respect to an issue and there is no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue, the court may grant a motion for judgment as a matter of law against that party on any claim, counterclaim, crossclaim, or third party claim that cannot under the controlling law be maintained without a favorable finding on that issue.
 
 
 26
 Fed.R.Civ.P. 50(a)(1). Judgment as a matter of law should be granted when
 
 
 27
 (1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [persons] could not arrive at a verdict against [it].
 
 
 28
 Bauer v. Raymark Indus., Inc., 849 F.2d 790, 792 (2d Cir.1988) (quoting Mallis v. Bankers Trust Co., 717 F.2d 683, 688-89 (2d Cir.1983)); accord Samuels v. Air Transport Local 504, 992 F.2d 12, 14 (2d Cir.1993); Vasbinder v. Ambach, 926 F.2d 1333, 1339 (2d Cir.1991); County of Suffolk v. Long Island Lighting Co., 907 F.2d 1295, 1311 (2d Cir.1990).
 
 
 29
 A district court must deny a motion for judgment as a matter of law unless, viewed in the light most favorable to the nonmoving party, "the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [persons] could have reached." Simblest v. Maynard, 427 F.2d 1, 4 (2d Cir.1970); accord Vasbinder, 926 F.2d at 1339. "The same framework governs appellate review of the granting of a motion for directed verdict or judgment [as a matter of law]." Sir Speedy, Inc. v. L & P Graphics, Inc., 957 F.2d 1033, 1039 (2d Cir.1992).
 
 
 30
 Herein, the prevailing employees claim that the district court erred in partially granting Local Union No. 3's Rule 50 motion because the motion was both procedurally and substantively flawed. Rule 50(b) provides that when a motion for judgment as a matter of law "made at the close of all the evidence" is denied, it may be renewed, and if a jury verdict is returned, the district court may, "in disposing of the renewed motion, allow the judgment to stand or may reopen the judgment and ... direct the entry of judgment as a matter of law." In Samuels, this Court ruled that judgment as a matter of law is limited to those issues "specifically raised in [a] prior motion for a directed verdict." 992 F.2d at 14. In its motion to dismiss or for a directed verdict made at the close of the plaintiff's case, Local Union No. 3 challenged only the adequacy of the grievances and the issue of exhaustion of remedies by the prevailing employees--it did not challenge the issue of damages. "The rule is well established that a motion for directed verdict at the close of all the evidence is a prerequisite for [judgment as a matter of law]." Hilord Chemical Corp. v. Ricoh Electronics, Inc., 875 F.2d 32, 37 (2d Cir.1989). Moreover, this procedural requirement may not be waived as a mere technicality. See Redd v. City of Phenix City, Ala., 934 F.2d 1211, 1214 (11th Cir.1991).
 
 
 31
 Local Union No. 3 contends that "nobody can know what damage verdict, if any, the jury will return. Until a damage verdict is rendered, a defendant cannot form an opinion as to whether such verdict was supported by the evidence." Local Union No. 3 also contends that "[w]hether a damage verdict is supported by the evidence is a factual question," and Rule 50(b) only refers to legal questions raised by the motion for a directed verdict. However, Local Union No. 3 was aware of the proof submitted on the issue of damages, and failed to challenge the sufficiency of this evidence in its motion for a directed verdict. "[T]he very purpose of Rule 50(b)'s requiring a prior motion for a directed verdict is to give the other party an opportunity to cure the defects in proof that might otherwise preclude him [or her] from taking the case to the jury." Baskin v. Hawley, 807 F.2d 1120, 1134 (2d Cir.1986) (internal quotation marks and citation omitted). Thus, if an issue is not raised in a previous motion for a directed verdict, a Rule 50(b) motion should not be granted unless it is "required to prevent manifest injustice." Id. Although Local Union No. 3 claims that it could not have raised the issue of damages previously because they were an unknown quantity, it could have challenged the sufficiency of the evidence for a damage award. See W.W.W. Pharmaceutical Co. v. Gillette Co., 984 F.2d 567, 570 (2d Cir.1993) (appellee moved for judgment as a matter of law in the district court "on the ground that there was no legally sufficient basis for a reasonable jury to find for the plaintiff[-appellant]"). Applying Samuels herein, then, Local Union No. 3 failed to meet the procedural requirements of Rule 50(b). See Samuels, 992 F.2d at 14. "By its procedural default at trial, [Local Union No. 3] is precluded from obtaining [judgment as a matter of law] in the appellate court." Hilord, 875 F.2d at 38. In addition, sufficiency of the evidence claims may not be reviewed upon appeal if they were not preserved in the trial court in a directed verdict motion. Id.
 
 
 32
 The prevailing employees contend that the damage awards should not have been vacated because they were not speculative, and were supported by the record evidence. The district court began its discussion of the issue by stating that "there was no reasonable view of the evidence that could support the monetary damages awarded to the eight successful plaintiffs by the jury." In reaching its conclusion that the damage awards were unreasonable, the district court noted that: (1) the lawsuit did not affect Abbey's recalls from lay-offs; (2) there was a lack of evidence that Abbey would have responded to requests from the union to recall all of the prevailing plaintiffs in view of the employer's plans to close the factory; and (3) there was a lack of evidence to support the backpay amounts the jury awarded. The district court stated that in light of the impending closing of the Brooklyn plant, "there [was] no evidence whatsoever of a time frame in which the plaintiffs might have returned to work, nor for how long they would have worked prior to the plant closing." The district court concluded, therefore, that since no evidence of a time frame was presented, it was speculative to determine what the amount of any lost wages could be.
 
 
 33
 The district court relied upon the following cases to support its conclusion that the jury's damage awards were overly speculative: Trademark Research Corp. v. Maxwell Online, Inc., 995 F.2d 326 (2d Cir.1993); Bloom v. International Bhd. of Teamsters Local 468, 752 F.2d 1312 (9th Cir.1984); and Yanity v. Benware, 376 F.2d 197 (2d Cir.), cert. denied, 389 U.S. 874, 88 S.Ct. 167, 19 L.Ed.2d 158 (1967). Trademark, a breach of contract suit, involved, inter alia, an appeal of a denial of a Rule 50 motion as to lost profits. 995 F.2d at 332. This Court ruled in that case that damages as to lost profits were not supportable because Trademark had "failed to establish its lost future profits with ... certainty." Id. at 332. In particular, we found that in order to recover damages for lost profits, such liability had to be "contemplated by the parties at the time of contracting." Id. at 333.
 
 
 34
 In Bloom, the Ninth Circuit reversed an award of damages where the plaintiffs alleged, inter alia, emotional distress from the union's breach of the duty of fair representation. 752 F.2d at 1314. The court held that where there was insufficient proof of outrageous conduct to "sustain a direct suit for infliction of emotional distress, ... insufficient facts exist to support an award of damages measured by emotional distress as a remedy for the breach itself." Id. at 1315.
 
 
 35
 In Yanity, the plaintiffs contended, inter alia, that a refusal to allow them "to bring before [a] union meeting their request that the union seek to vacate [an] arbitration award violated their right" to express their opinions at union meetings "upon any business properly before the meeting." 376 F.2d at 200 (internal quotation marks and citation omitted). The meeting referred to by the plaintiffs occurred after the statutory time period for bringing an action to vacate the arbitration award. Id. In dismissing the plaintiffs claim, this Court stated, in a majority opinion, that "[t]he connection between defendant's alleged wrongful act and the injury to plaintiffs is ... speculative and too remote as a matter of law to permit an award of damages." Id.
 
 
 36
 We believe that the damages arrived at by the jury herein were reasonable. The facts of this case are clearly distinguishable from those in the cases relied upon by the district court. In Trademark, the law required that the possibility of lost profits be contemplated at the time of contract formation, and, since this did not occur, it found no basis for awarding such damages. 995 F.2d at 334. In Bloom, the plaintiffs could not be awarded damages as there were no facts to support the underlying claim of emotional distress. 752 F.2d at 1315. Finally, in Yanity, the injury complained of by the plaintiffs--that they were refused the right to speak about an arbitration award at a union meeting--was found to be remote, since, by that time, it was too late to legally challenge the arbitration award. 376 F.2d at 200.
 
 
 37
 Here, a damages award following a finding of the union's liability was not contrary to the law. See generally, Vaca, supra. The plaintiffs' injuries--the lay-offs--were not remote in time to the claims for backpay. Further, the underlying facts support the jury awards. The jurors had before them evidence pertaining to the starting and lay-off dates for each of the prevailing employees, as well as the date the plant was closed; the record also contained the seniority and payroll lists, and the testimony of the plaintiffs regarding other employment and/or unemployment compensation benefits. Thus, contrary to the district court's conclusion, we believe that a reasonable juror could have utilized this information to make a reasonable jury award. See Whitney v. Citibank, N.A., 782 F.2d 1106, 1118 (2d Cir.1986) ("Since these inferences are within the range of permissibility and the award[s] [were] a fair approximation of [the plaintiffs'] loss, the award[s] must stand."). Absolute certainty is not required for jury action and, given the record evidence, we believe that the district court should not have usurped the role of the jury. See Lavender v. Kurn, 327 U.S. 645, 653, 66 S.Ct. 740, 744, 90 L.Ed. 916 (1946) (A reasonable jury award should not be vacated simply because "a measure of speculation and conjecture is required" to settle the dispute.); cf. Lexington Products Ltd. v. B.D. Communications, Inc., 677 F.2d 251, 252 (2d Cir.1982) (In a diversity action based upon breach of contract, this Court reversed an award of nominal damages, stating that where there is "evidence in the record from which substantial damages may be computed with reasonable certainty, we vacate the judgment and remand for further proceedings.").
 
 
 38
 The district court instructed the jury that, if appropriate, it could award backpay to the plaintiffs. Ordinarily, backpay is an appropriate remedy where an employee has been injured because of the action or inaction of his or her employer, or, as in this case, of a union. See, e.g., Albemarle Paper Co. v. Moody, 422 U.S. 405, 418-19, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280 (1975) ("[W]here a legal injury is of an economic character, [t]he general rule is, that when a wrong has been done, and the law gives a remedy, the compensation shall be equal to the injury.... The injured party is to be placed, as near as may be, in the situation he [or she] would have occupied if the wrong had not been committed.") (internal quotation marks and citation omitted). Difficulty in calculating a backpay award does not constitute a circumstance which warrants the denial of backpay. See id. at 421, 95 S.Ct. at 2373 ("[B]ackpay should be denied only for reasons which ... would not frustrate the central statutory purpose [of the legislation] of eradicating discrimination ... and making persons whole for injuries suffered through past discrimination."). Although Albemarle is an employment discrimination case under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Secs. 2000e-2000e-17, it aptly illustrates the "make whole" remedy of backpay awards against an employer, or, as in this case, a union, which has breached its statutory duty to an employee.
 
 
 39
 Several circuits, in the Title VII context, have held that where there is difficulty in calculating the backpay award, the award will not be denied if it is "reasonable." See Rasimas v. Michigan Dep't of Mental Health, 714 F.2d 614, 626 (6th Cir.1983) ("Neither the arguable good faith of the defendant employer nor the difficulty in calculating the backpay award constitute exceptional circumstances [to deny backpay]."), cert. denied, 466 U.S. 950, 104 S.Ct. 2151, 80 L.Ed.2d 537 (1984); Kirby v. Colony Furniture Co., 613 F.2d 696, 699 (8th Cir.1980) ("[T]he fact that computation of the award will be difficult has been specifically rejected as an adequate 'special factor' [to deny backpay relief]."); Stewart v. General Motors Corp., 542 F.2d 445, 451 (7th Cir.1976) ("[G]ood faith [of the employer], or [the fact] that the computation of the [backpay] award will be difficult" should not prevent a backpay award for a meritorious claim.), cert. denied, 433 U.S. 919, 97 S.Ct. 2995, 53 L.Ed.2d 1105 (1977).
 
 
 40
 It is not only Title VII "make whole" caselaw, however, which supports the conclusion that the jury awards herein were not speculative. In Smith v. Hussmann Refrigerator Co., 619 F.2d 1229 (8th Cir.) (in banc), cert. denied, 449 U.S. 839, 101 S.Ct. 116, 66 L.Ed.2d 46 (1980), for example, the Eighth Circuit ruled in an action which included a duty of fair representation claim that judgment as a matter of law in favor of the defendant was not warranted merely because damages were difficult to calculate. 619 F.2d at 1235, 1243. In Smith, union employees sued their employer and union for (i) breach of their collective bargaining agreement; (ii) breach of the duty of fair representation; and (iii) racial discrimination. 619 F.2d at 1232. The district court granted the defendants' motion for judgment notwithstanding the verdict following a jury verdict in favor of the employees. Id. The Eighth Circuit, sitting in banc, vacated that portion of the district court's decision and remanded the case to reconsider the jury's recommendation. Id. at 1246. In doing so, the court noted that:
 
 
 41
 This case involved a complex course of conduct on the part of defendants and the evidence interrelates and is susceptible of different reasonable inferences. In a fair exercise of judgment, reasonable persons could have concluded that defendants breached the collective bargaining agreement and the union breached its duty to represent plaintiffs fairly.
 
 
 42
 Id. at 1243.
 
 
 43
 Local Union No. 3 relies upon Wood v. International Bhd. of Teamsters, Local 406, 807 F.2d 493 (6th Cir.1986), cert. denied, 483 U.S. 1006, 1007, 107 S.Ct. 3232, 97 L.Ed.2d 738 (1987), to support its claim that the jury awards were speculative. In that case, employees sued their former employer, new employer, and their union because the new employer did not adopt the former employer's collective bargaining agreement. 807 F.2d at 496. After an arbitrator found for the new employer, and the district court granted the old employer's motion for dismissal, the jury found, inter alia, that the union had breached its duty of fair representation which had, in turn, undermined the arbitration process. Id. at 498. The Sixth Circuit, in reversing the district court's denial of the union's Rule 50 motion, found that, inter alia, the union had not been shown to be liable on the theory of breach of the duty of fair representation. Id. at 501, 503. Local Union No. 3's reliance upon Wood is misplaced. In that case, it was not demonstrated that the union's actions were the cause of the employees' economic injury. Id. at 503. Here, the union refused to even minimally investigate the plaintiffs' seniority grievances against Abbey, and thus, a reasonable jury could have found that Local Union No. 3's inaction was a direct cause of the plaintiffs' economic injuries.
 
 
 44
 Finally, we note that on appeal, the plaintiffs have demonstrated a perfectly rational basis for the awards. The calculations in their brief explain, virtually to the penny, how the jury might have arrived at the damages it awarded. We conclude that the jury's awards were reasonably supported by the evidence.
 
 
 45
 We also conclude that the damages awards herein were reasonably allocated. The jury found that the union was responsible for 90% of the damages suffered by Febles, as well as 100% of the damages suffered by the remaining seven employees. A union is liable to an employee for compensatory damages flowing from the union's conduct. Bowen v. United States, 459 U.S. 212, 218, 103 S.Ct. 588, 592, 74 L.Ed.2d 402 (1983). The jurors could have reasonably inferred the percentage of liability from a logical assessment of the evidence before them: the union had the departmental seniority lists and was responsible for enforcing the CBA; furthermore, there was testimony which demonstrated that the union failed to follow-through with any of the plaintiffs' grievances. The fact that Abbey had determined to close the Brooklyn plant did not release the union from its duty of fair representation pursuant to the CBA.
 
 
 46
 In conclusion, it is our view that the district court erred in granting judgment as a matter of law in favor of the union. We conclude that the jury awards were reasonable, and we remand for reinstatement of the jury awards.
 
 D. Attorneys Fees
 
 47
 Local Union No. 3 claims that the award of attorneys fees was contrary to law. The general rule is that litigants should pay their respective legal fees, regardless of the outcome of the lawsuit. Sierra Club v. United States Army Corps of Engineers, 776 F.2d 383, 390 (2d Cir.1985), cert. denied, 475 U.S. 1084, 106 S.Ct. 1464, 89 L.Ed.2d 720 (1986). Unless authorized by specific statutory or contractual provisions, attorneys fees generally are not recoverable. Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 254-57, 95 S.Ct. 1612, 1620-21, 44 L.Ed.2d 141 (1975). However, recovery of attorneys fees has been allowed or considered where the litigation had the potential to confer a common benefit on the members of an ascertainable class or group. See Mills v. Electric Auto-Lite Co., 396 U.S. 375, 393-94, 90 S.Ct. 616, 626, 24 L.Ed.2d 593 (1970) ("Other cases have departed further from the traditional metes and bounds of the doctrine, to permit reimbursement in cases where the litigation has conferred a substantial benefit on the members of an ascertainable class...."); Ames, 864 F.2d at 293 (Court rejects awarding attorneys fees in a section 301 suit, stating, inter alia, that the plaintiff did not "contend that he conferred a common benefit on others in addition to himself."); Donovan v. CSEA Local Union 1000, 784 F.2d 98, 102 (2d Cir.) (Award of attorneys fees is permissible where the plaintiff's suit "resulted in a substantial benefit to the members of an identifiable class of ... beneficiaries."), cert. denied, 479 U.S. 817, 107 S.Ct. 74, 93 L.Ed.2d 30 (1986).
 
 
 48
 This Court has held that a union member, in a suit against the union brought pursuant to the Labor-Management Reporting and Disclosure Act of 1959, Pub.L. No. 86-257, 73 Stat. 519, reprinted in 1959 U.S.C.C.A.N. 565 (codified as amended in scattered sections of 29 U.S.C.), need not recover compensatory damages from the union in order to be entitled to a fee award. Rosario v. Amalgamated Ladies' Garment Cutters' Union, 749 F.2d 1000, 1007 (2d Cir.1984). The Rosario court explained that awarding attorneys fees in such cases is valid because the liability verdict recognized the "deprivation of the plaintiffs' due process rights" by the union, and thus was "of benefit to the union and its membership regardless of the amount of provable damage to the plaintiffs." Id. This principle is certainly appropriate in duty of fair representation suits, since it is apt to encourage unions to more zealously represent employees' interests. See Hall v. Cole, 412 U.S. 1, 8, 93 S.Ct. 1943, 1948, 36 L.Ed.2d 702 (1973) (attorneys fees appropriate where the lawsuit vindicated valuable rights of union membership, and will improve union responsibility). We have also stated, in considering attorneys fees where the damages award was low, that to "[r]educ[e] the 'lodestar' fee ... simply because plaintiff was unsuccessful in proving damages amounts to a double-discount against [the] prevailing plaintiff for his lack of monetary success." Cowan v. Prudential Ins. Co. of Am., 935 F.2d 522, 525 (2d Cir.1991). Accordingly, the awarding of attorneys fees by the district court here was appropriate.[7]
 
 
 49
 The prevailing employees claim in their cross-appeal that the district court abused its discretion in reducing the fees requested by their attorneys by "drastically slashing plaintiffs' legal fee requests, and by doing so without an explanation of exactly what in the fee applications warranted such reductions." "The calculation of reasonable attorneys fees is a factual issue whose resolution is committed to the discretion of the district court." Saulpaugh v. Monroe Community Hosp., 4 F.3d 134, 145 (2d Cir.1993), cert. denied, --- U.S. ----, 114 S.Ct. 1189, 127 L.Ed.2d 539 (1994). This is because, in general, "[t]he trial judge is in a better position than an appellate court to appraise the need for and potential benefits derived from the attorney's services...." Rosario, 749 F.2d at 1004.
 
 
 50
 In determining reasonable attorneys fees the court must calculate a "lodestar" figure based upon "the hours reasonably spent by counsel ... multiplied by the reasonable hourly rate." F.H. Krear & Co. v. Nineteen Named Trustees, 810 F.2d 1250, 1263 (2d Cir.1987) (internal quotation marks and citation omitted). The "lodestar" figure should be "in line with those [rates] prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation." Blum v. Stenson, 465 U.S. 886, 896 n. 11, 104 S.Ct. 1541, 1547 n. 11, 79 L.Ed.2d 891 (1984); see also Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) ("The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."). We have stated that the "prevailing community" the district court should consider to determine the "lodestar" figure is "the district in which the court sits," unless there has been a showing that "special expertise of counsel from a ... [different] district [was] required." Polk v. New York State Dep't of Correctional Servs., 722 F.2d 23, 25 (2d Cir.1983).
 
 
 51
 Herein, the court awarded Hall & Sloan $4,775; Davis & Eisenberg was awarded $42,475.[8] Davis & Eisenberg requested fees of $225 per hour for Herbert Eisenberg and $200 per hour for Robert Davis. The district court approved $175 per hour for Eisenberg and $150 per hour for Davis. Twenty-two hours were submitted for Burton Hall, and eighty-three hours were submitted by Wendy Sloan. Robert Davis submitted 261.5 hours, and Herbert Eisenberg submitted 237.45 hours.
 
 
 52
 In Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir.1974), the Fifth Circuit established twelve factors for evaluating fee applications: time and labor required; novelty and difficulty of the questions; the skill requisite to perform the legal service properly; preclusion of other employment of the attorney in taking the case; customary fee; whether the fee is fixed or contingent; time limitations imposed by the client or the circumstances; the amount involved and the results obtained; experience, reputation, and ability of the attorneys; the undesirability of the case; nature and length of the professional relationship with the client; and awards in similar cases. 488 F.2d at 717-719. This Court applied the Fifth Circuit approach in U.S. Football League v. National Football League, 887 F.2d 408, 415 (2d Cir.1989), cert. denied, 493 U.S. 1071, 110 S.Ct. 1116, 107 L.Ed.2d 1022 (1990).
 
 
 53
 "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." Hensley, 461 U.S. at 437, 103 S.Ct. at 1941. When a district court augments or reduces the lodestar figure it should, at least briefly, state its reasons for doing so. Id. at 433-34, 437, 103 S.Ct. at 1939-40, 1941. In addition, "district courts must examine the hours expended by counsel and the value of the work product ... to the client's case." DiFilippo v. Morizio, 759 F.2d 231, 235 (2d Cir.1985).
 
 
 54
 With regard to the per hour fee reduction by the district court, we believe that the district court did not abuse its discretion. See Cabrera, 24 F.3d 372, 393 (A district court's "choice of rates [is] well within [its] discretion."). While it is true that it may have been desirable for the district court to have been provided with affidavits from other practicing, similarly situated attorneys, such information was not indispensable. In addition, the district court cited a number of cases in this Circuit which supported the per hour rates it approved: Huntington Branch NAACP v. Town of Huntington, 749 F.Supp. 62, 63, 65 (E.D.N.Y.1990) (rates of $135-225 per hour in housing discrimination case); Jennette v. City of New York, 800 F.Supp. 1165, 1166, 1168-69 (S.D.N.Y.1992) ($200 per hour for sole practitioner with ten years' experience in civil rights actions); Nu-Life Constr. Corp. v. Board of Educ., 795 F.Supp. 602, 604, 606 (E.D.N.Y.1992) (fees of $165-200 per hour in RICO action).
 
 
 55
 In New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136 (2d Cir.1983), we stated that applications for attorneys fees must "specify, for each attorney, the date, the hours expended, and the nature of the work done." 711 F.2d at 1148. In Lewis v. Coughlin, 801 F.2d 570, 577 (2d Cir.1986), we held that under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. Sec. 1988 (1988 & Supp. IV), attorneys fees for time spent preparing a fee application were not to be awarded unless contemporaneous time records had been maintained and also were available on demand.
 
 
 56
 Local Union No. 3 claims that attorneys fees should not have been awarded herein because, inter alia, Davis & Eisenberg did not submit actual contemporaneous time records, but instead submitted a typed listing of their hours from their computer records. This argument is unpersuasive. A review of the submissions made by Davis & Eisenberg shows that they made contemporaneous entries as the work was completed, and that their billing was based on these contemporaneous records. We believe this falls sufficiently within the meaning of "contemporaneous," and that such a practice is not contrary to the dictates of Carey. See David v. Sullivan, 777 F.Supp. 212, 223 (E.D.N.Y.1991) ("Attorney affidavits which set forth all charges with the required specificity but which are reconstructions of the contemporaneous records satisfy the rationale underlying Carey ...."); Lenihan v. City of New York, 640 F.Supp. 822, 824 (S.D.N.Y.1986) (typewritten transcription of original records are acceptable); see also Lewis, 801 F.2d at 577 ("We recognize that other courts have held that affidavits summarizing time logs are acceptable.").
 
 
 57
 The district court made substantial disallowances in the number of hours claimed by both Hall & Sloan and Davis & Eisenberg. As Judge Spatt had vacated the jury's damage verdicts and substituted nominal awards of $1, he was no doubt influenced, in making his fee determination, by the fact that he considered the plaintiffs' success to have been minimal. As this Court on appeal has reinstated the jury's award of damages, the plaintiffs were in the end far more successful. In light of the plaintiffs' ultimate success, we believe that a more generous appraisal of the number of hours reasonably expended on the litigation is warranted. We therefore remand the award of attorneys fees for reconsideration; given the ultimate success of the plaintiffs, the reasonableness of the time spent by the attorneys should be reevaluated.[9]
 
 
 58
 The district court eliminated all of the hours submitted by Davis & Eisenberg as travel time. We think this was error. See, e.g., Davis v. City and County of San Francisco, 976 F.2d 1536, 1543 (9th Cir.1992) ("The touchstone in determining whether hours have been properly claimed is reasonableness[,] ... made by reference to standards established in dealings between paying clients and the private bar."). On the other hand, we note that district courts retain the authority to ensure that excessive fees are not assessed against the nonprevailing party. See, e.g., Jennette v. City of New York, 800 F.Supp. 1165, 1170 (travel time compensated at 50% of the hourly rate awarded). We therefore remand for a reconsideration of this issue.
 
 E. Prejudgment Interest
 
 59
 The district court denied the plaintiffs' application for an award of prejudgment interest. An award of prejudgment interest in a section 301 action is within the discretion of the trial judge. Colon Velez v. Puerto Rico Marine Management, Inc., 957 F.2d 933, 934, 941 (1st Cir.1992); International Ass'n of Bridge Workers v. Higdon Const. Co., 739 F.2d 280, 283 (7th Cir.1984). However, we have held that "it is ordinarily an abuse of discretion not to include pre-judgment interest in a back-pay award." Clarke v. Frank, 960 F.2d 1146, 1154 (2d Cir.1992) (internal quotation marks and citations omitted). Accordingly, we vacate and remand this matter to the district court to determine, given the reinstatement of the jury awards, whether pre-judgment interest is appropriate.
 
 CONCLUSION
 
 60
 The judgment of the district court is affirmed with regard to (i) the finding of liability for the breach of the duty of fair representation by Local Union No. 3, and (ii) the ruling that it would have been futile to require the prevailing employees to exhaust internal union remedies. We reverse the ruling which set aside the jury's awards and granted nominal damages instead, and we remand for the district court to reinstate the jury's damages awards. We vacate the judgment with regard to the award of attorneys fees and the denial of pre-judgment interest, and remand for the district court to recalculate attorneys fees and, if appropriate, calculate pre-judgment interest, in accordance with this opinion.
 
 
 
 [1]
 The district court states that the jury awarded a total of $25,965.86 in damages to the prevailing plaintiffs. However, the total of the jury awards is actually $25,969.86. See infra note 6
 
 
 [2]
 Section 9(a) of the NLRA provides that the designated representative of a collective bargaining unit
 shall be the exclusive representative of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment. 29 U.S.C. Sec. 159(a) (1988). The section also provides "[t]hat any individual employee or a group of employees shall have the right at anytime to present grievances to their employer." Id.; see also Moore v. Local Union 569, 989 F.2d 1534, 1544 (9th Cir.1993) ("[T]he duty of fair representation is based on the ... [NLRA,] which creates a union's exclusive authority to represent all employees in a bargaining unit."), cert. denied, --- U.S. ----, 114 S.Ct. 1066, 127 L.Ed.2d 385 (1994).
 Jurisdiction of this action is placed in the federal courts by section 301 of the Labor Management Relations Act of 1947 ("LMRA"), which provides that both employers and labor organizations may be sued in federal court for "violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ..., or between any such labor organizations." 29 U.S.C. Sec. 185(a) (1988).
 
 
 [3]
 WARN requires an employer to give notice of a plant closing or mass layoff "to each representative of the affected employees" and "to the State dislocated worker unit." 29 U.S.C. Secs. 2102(a)(1) and (2) (1988)
 
 
 [4]
 The seniority clause of the CBA between Abbey and Local Union No. 3 provided that: (i) if employees were to be laid-off, the employer would "first lay[-]off those employees youngest in time of service;" (ii) seniority within departments was conditioned upon equal skill, ability and type of work; and (iii) seniority could be disregarded "in order to retain ... employees who have general all around skill and ability provided, however, that in general no Employer shall be permitted to invoke the rights under this provision to retain employees with lower rates of pay than those of the employees laid[-]off."
 
 
 [5]
 The plaintiffs who proceeded to trial before the jury included: Socorro Cruz, Milagros Colon, Erlinda Sampson, Pablo Castro, Agripina Torres, Gladys Gonzalez, Delza Perez, Julio Colon, Leonie Abellard, Marie Lucienne Jacob, Maria Quintero, Marisol Quintero Delarra, Carmen Febles, and Elizabeth Martinez
 
 
 [6]
 The breakdown of the backpay awards is as follows: Carmen Febles was awarded $499.12; Elizabeth Martinez $1,010.88; Marie Jacob $11,190.19; Leonie Abellard $8,711.35; Socorro Cruz $388.44; Maria Quintero $1,010.88; Delza Perez $1,034.28; and Agripina Torres $2,124.72
 
 
 [7]
 Local Union No. 3 also argues that attorneys fees are inappropriate where nominal damages are awarded. See Farrar v. Hobby, --- U.S. ----, ----, 113 S.Ct. 566, 575, 121 L.Ed.2d 494 (1992) (where only nominal damages in a civil rights case are awarded, the usual attorneys fee award should be no award). Although we rule here that the jury awards must be reinstated, we note that this Court has ruled that a union member need not recover compensatory damages in order to be entitled to attorneys fees. See Rosario, 749 F.2d at 1007; Cabrera v. Jakabovitz, 24 F.3d 372, 393 (2d Cir.1994), cert. denied, --- U.S. ----, 115 S.Ct. 205, --- L.Ed.2d ---- (1994), ("The fact that plaintiffs obtained only one dollar in damages from [the defendant] does not automatically exempt him from paying any share of plaintiffs' attorney's fees.")
 
 
 [8]
 The prevailing employees were originally represented by the law firm of Hall & Sloan. When one of the partners in Hall & Sloan--Burton Hall--died in November, 1991, the law firm of Davis & Eisenberg was substituted as their counsel
 
 
 [9]
 In recalculating attorneys fees, we note that Davis & Eisenberg and Hall & Sloan may well be entitled to receive compensation for the reasonable amount of time spent in preparing the plaintiffs' fee application. See Donovan, 784 F.2d at 106 ("The fee application is a necessary part of the award of attorney's fees. If the original award is warranted, we think that a reasonable amount should be granted for time spent in applying for the award.")