**BRISTOL INVESTMENT FUND, INC., Plaintiff,**

v.

**CARNEGIE INTERNATIONAL CORP., Defendant.**

**No. 02 Civ. 8891(SAS).**

United States District Court, S.D. New York.

Dec. 2, 2003.

---

Thomas J. Fleming, Olshan Grundman Frome Rosenzweig & Wolosky, LLP, New York, NY, for Plaintiff.

Robert Frey, William Murphy Jr. & Associates, P.A., Baltimore, MD, for Defendant.

## MEMORANDUM OPINION AND ORDER

SCHEINDLIN, District Judge.

In an Opinion and Order dated October 30, 2003, this Court granted Bristol Investment Fund's motion for summary judgment, and entered judgment against Carnegie International Corporation in the amount of $376,091.21. *See Bristol Inv. Fund, Inc. v. Carnegie Int'l Corp.*, No. 02

Civ. 8891, 2003 WL 22462026, at *1 (S.D.N.Y. Oct.30, 2003). Pursuant to paragraph 8(a) of the Securities Purchase Agreement, paragraph 4.5 of the Debenture, and paragraph 11(d) of the Registration Rights Agreement, Bristol now seeks $17,816.35 in attorneys' fees, comprised of $15,753.00 in fees and $2,063.65 in costs.[1]

## I. APPLICABLE LAW

A fee application must be supported by contemporaneous time records which "specify, for each attorney, the date, the hours expended, and the nature of the work done." *New York Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir.1983); *see also Cruz v. Local Union No. 3 of Int'l Bro. of Elec. Workers*, 34 F.3d 1148, 1160 (2d Cir.1994). Moreover, any award of attorneys' fees must be reasonable. *See Pino v. Locascio*, 101 F.3d 235, 237 (2d Cir.1996) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). In assessing the appropriate level of fees to be awarded,

a variety of factors informs the court's determination ... including the difficulty of the questions involved; the skill required to handle the problem; the time and labor required; the lawyer's experience, ability and reputation; the customary fee charged by the Bar for similar services; and the amount involved.

1. Paragraph 8(a) of the Securities Purchase Agreement and paragraph 11(d) of the Registration Rights Agreement both state: "The party which does not prevail in any dispute arising under this agreement shall be responsible for all fees and expenses, including attorneys' fees, incurred by the prevailing party in connection with such dispute." Securities Purchase Agreement, Ex. A to the Declaration of Paul Kessler, Bristol director, in Support of

Plaintiff's Motion for Summary Judgment ("Kessler Dec."), ¶ 8(a); Registration Rights Agreement, Ex. D to the Kessler Dec., ¶ 11(d).

Paragraph 4.5 of the Debenture states: "If default is made in the payment of this Debenture, the Borrower shall pay the Holder hereof costs of collection, including reasonable attorneys' fees." Secured Convertible Debenture, Ex. B to the Kessler Dec., ¶ 4.5.

*Mar Oil S.A. v. Morrissey,* 982 F.2d 830, 841 (2d Cir.1993) (quotations and alterations omitted).

## II. DISCUSSION

I have reviewed the Declaration of Thomas J. Fleming, plaintiff's counsel, in Support of Plaintiff's Application for Attorneys' Fees. I have also reviewed the exhibits to that Declaration, comprised of more than thirty pages of invoices detailing the disbursements and attorney time spent on Bristol's behalf. I conclude that Bristol's request for attorney's fees is reasonable and warranted.

Over the course of one year, Bristol's attorneys prepared the complaint, attended court conferences, engaged in correspondence and communications with the client and adversary, participated in a court-ordered settlement conference, letter-briefed defendant's request for a change of venue, engaged in summary judgment motion practice, and prepared a damages calculation as requested by the Court. This work was done at a discounted rate of $395 dollars per hour. *See* Declaration of Thomas J. Fleming in Support of Plaintiff's Application for Attorneys' Fees ("Fleming Dec.") ¶ 2. The invoices attached to the Fleming Declaration provide significant detail regarding the type of work that was done by Bristol's attorneys on a day-to-day basis, and the time allocations are reported in six minute increments. The invoices also reflect work done by paralegals and secretaries. Finally, the invoices include various disbursements that were associated with the tasks Bristol's attorneys undertook in this ac-

tion, including messenger, fax, express mail, copying and filing fees, among other things. These fees appear to be both typical and reasonable.

■ Carnegie objects to the amount of attorneys' fees and expenses on a number of grounds. With respect to fees, Carnegie's principal argument is that Bristol is not entitled to any fees incurred after January 29, 2003, the date of Carnegie's final settlement offer, because Bristol rejected the offer and ultimately recovered less money. However, Carnegie provides no case law in support of this argument, and the Debenture, Securities Purchase Agreement, and Registration Rights Agreement specifically allow the *prevailing party* to recover the costs and attorneys' fees associated with enforcement of the agreements. The fact that Bristol *could have* recovered more money had it opted to settle is irrelevant given that Bristol ultimately did prevail in this action.[2] Carnegie's secondary argument—that the work done by Bristol's attorneys should or could have been done by a less experienced attorney billing at a lower rate—is simply unpersuasive.

■ With respect to the disbursements, Carnegie argues that Bristol does not provide enough detail to support the costs, and suggests that Bristol's attorneys should not have used taxis and express mail, or made photocopies or transmitted faxes. These arguments are meritless. Bristol's disbursements are not expressed in a lump sum, but rather are detailed on a monthly basis by specific purpose. Moreover, I cannot con-

2. Of course, had Carnegie's settlement offer been made pursuant to Rule 68 of the Federal Rules of Civil Procedure, this argument would be persuasive because where an offer is made under Rule 68, "[i]f the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs

incurred after the making of the offer." Fed. R.Civ.P. 68. However, it appears that Carnegie's settlement offer was not made pursuant to Rule 68. *See* 11/21/03 Letter from Robert Frey, defendant's counsel, in opposition to Bristol's application for attorneys' fees, at 4–5.

clude that Bristol's use of messenger, express mail and other services was unreasonable. However, because fees for word processing and secretarial work constitute overhead that is not attributable to a particular client, I decline to award those costs, amounting to $1105.00, to Bristol. *See Kuzma v. Internal Revenue Serv.,* 821 F.2d 930, 933 (2d Cir.1987) ("Identifiable, out-of-pocket disbursements for items such as photocopying, travel, and telephone costs are [recoverable as disbursements, but] routine office overhead [ ] must normally be absorbed within the attorney's hourly rate."); *Marisol A. ex rel. Forbes v. Giuliani,* 111 F.Supp.2d 381, 390 (S.D.N.Y. 2000) ("This Court has previously recognized that clerical and secretarial services are part of overhead and are not generally charged to clients.").

Finally, Carnegie's argument that Bristol fails to allocate its expenses between the various matters for which its attorneys provided services to Bristol is disingenuous. In its request for fees, Bristol specifically noted that portions of the invoices were redacted to eliminate fees for services that were not connected to this action. *See* Fleming Dec. ¶ 2.

## III. CONCLUSION

For the foregoing reasons, Bristol is entitled to attorneys' fees and costs in the amount of $16,711.65, comprised of $15,753 in attorneys' fees and $958.65 in disbursements. This is in addition to the $376,091.21 awarded on October 30, 2003.