### Adamantia POLLIS, Plaintiff,

v.

### The NEW SCHOOL FOR SOCIAL RESEARCH, Defendant.

### No. 93 Civ. 3328 (CSH).

United States District Court,
S.D. New York.

July 2, 1996.

Goodman & Zuchlewski, New York City, for Plaintiff (Janice Goodman, of counsel).

Putney, Twombly, Hall & Hirson, New York City, for Defendant (Michael T. McGrath and John D. Wales, of counsel).

## MEMORANDUM OPINION AND ORDER

HAIGHT, Senior District Judge:

Following a jury verdict in plaintiff's favor in this age discrimination and equal pay case, the form of the judgment to be entered, including allowances of attorney's fees and costs, remained to be determined by the Court. In keeping with the tradition established at the inception of this contentious litigation, counsel for the parties have submitted voluminous and increasingly shrill written submissions. This Memorandum Opinion resolves all outstanding issues, so that judgment may enter.

I

*The Litigation History*

Familiarity with the Court's several prior opinions in this case is presumed. I set forth the litigation history only to the extent necessary to furnish the background for a resolution of the remaining disputes.

At the pertinent times, plaintiff Adamantia Pollis was a tenured professor of political science on the graduate faculty of defendant The New School for Social Research (the "New School"). In mid-December, 1992, the New School advised Pollis that she would be retired from her tenured appointment upon reaching the age of 70 on June 22, 1993. The New School offered Pollis continued part-time employment as an adjunct professor.

Pollis did not go gently into that academic twilight. Instead, she sued the New School in this Court. Pollis's complaint alleged that the New School's actions violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623 *et. seq.;* Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq.;* the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d) *et. seq.;* and § 296 of the New York State Human Rights Law. Pollis moved for a preliminary injunction restraining the New School from involuntarily retiring her at age 70. She based that motion for preliminary equitable relief upon her ADEA and Title VII claims.

The New School moved for partial summary judgment dismissing four of the five causes of action alleged in the complaint, including Pollis's claims under the ADEA and Title VII. The Court dismissed Pollis's ADEA claims.

But the Court rejected the New School's contention that it lacked subject matter jurisdiction over Pollis's Title VII claims. Memorandum Opinion and Order dated July 21, 1993, 829 F.Supp. 584, 586–90. After conducting an evidentiary hearing, the Court

denied Pollis's motion for a preliminary injunction, on the ground that Pollis had failed to demonstrate the requisite irreparable injury. *Id.* at 601. However, the Court ended its opinion on a cautionary note:

> If Pollis reports for duty in the fall as an adjunct professor with the additional responsibility of mentoring or supervising candidates for master's and doctoral degrees sufficiently advanced in their work, and encounters a denial of office space reasonably necessitated by her responsibilities, a denial of full library privileges, a barring of the door to the computer facilities, and a pretense on the part of the institution telephone switchboard that Pollis is no longer affiliated with the New School, or any combination of these deprivations (which Provost Walzer gave the Court to understand should not be anticipated), then the Court might well take a different view of the matter. Certainly Pollis, in such circumstances, could revive the Court's limited subject matter jurisdiction, and apply again for preliminary injunctive relief.

*Id.* at 601–02.

Whether inspired by this judicial language or not, the New School tendered to Pollis, during her enforced service as an adjunct professor, the usual facilities and courtesies attendant upon that academic rank. Pollis did not reapply for a preliminary injunction.

Discovery went forward. In January 1996, Pollis's Title VII, EPA, and New York State Human Rights Law claims were tried to a jury, which rendered its findings in the form of a Special Verdict. With respect to Pollis's Title VII claim that her post-retirement treatment was discriminatory on the basis of gender, the jury found in her favor, awarded her $60,000 as compensatory damages for emotional distress and humiliation, and $40,000 in punitive damages.

With respect to Pollis's EPA claims, the jury found in her favor with respect to each of the five male professors specifically identified by Pollis as "comparators;" found that the New School had not proven any of the EPA defenses; and found further that the New School, in paying Pollis less than her male comparators, knew that it was violating the EPA or acted with reckless disregard for its provisions, and was acting in furtherance of an ongoing policy or practice to pay female tenured professors less than male tenured professors.

However, the jury rejected Pollis's Title VII claim that, with respect to her pre-retirement compensation, the New School intentionally discriminated against her on the basis of her gender. Accordingly, the jury rejected Pollis's claims for compensatory damages for emotional distress and humiliation and for punitive damages during the pre-retirement period.

Following the jury's verdict, Pollis and the New School submitted cross-judgments which, predictably enough, differed significantly. The Court resolved those disputes in a Memorandum Opinion and Order dated March 15, 1996, reserving for later decision only the parties' cross-claims for attorney's fees. That opinion recited that the judgment will contain the $60,000 and $40,000 for post-retirement compensatory and punitive damages, respectively; and $186,388, the amount calculated by Pollis for the New School's willful violation of the Equal Pay Act, together with prejudgment interest in the amount of $85,418.

The Court rejected Pollis's calculations of her Title VII post-retirement claims. Her proposed judgment included (1) the amount of $51,090 representing backpay, together with prejudgment interest through January 31, 1996 in the amount of $12,285; and (2) a demand for additional compensation as front pay, at annual rates of $30,000 from January 1, 1996 through June 30, 1998, and $25,000 through June 30, 2001.

The Court, which has the responsibility of adjudicating these forms of relief in Title VII cases, *see* 42 U.S.C. § 1981a(b)(2), reduced these amounts significantly. Backpay will be awarded in the amount of $21,500, exclusive of prejudgment interest. Two years' front pay will be awarded in a total amount of $16,200. *See* Memorandum Opinion and Order dated March 15, 1996 at slip op. 6–10, 1996 WL 120816.

The Court also rejected Pollis's sweeping demands for equitable relief. In her pro-

posed judgment, Pollis asked the Court to enjoin the New School from terminating her employment at any time, and to grant her the honorific title of Professor Emerita. The Court directed that injunctive relief will be limited to: "(a) restraining the New School from retaliating against Pollis for commencing or continuing this litigation; and (b) requiring the New School to consider Pollis's request for the title of Professor Emerita based on her academic merits, without being influenced in any way by the existence of this litigation." *Id.* at slip op. 5.

It is against this litigation history that the present cross-motions for the allowance of attorney's fees and costs must be considered.

## II

*Pollis's Claim for Attorney's Fees and Costs*

Pollis claims $221,135 in attorney's fees and $22,741.92 in costs and expenses.[1]

With respect to attorney's fees, Pollis's claim is based upon computerized time sheets maintained by the office of her attorney, Janice Goodman, a partner in the firm of Goodman & Zuchlewski. Those records reflect that Goodman has devoted 570.5 hours to the case since its inception. Goodman recognizes in principle that plaintiff cannot be compensated for attorney's fees generated by the ADEA claim, which the Court dismissed on the New School's motion. But Pollis claims that only 27 of Goodman's 570.5 total hours were spent on the ADEA claim. That leaves 543.5 hours of Goodman's time, at a claimed hourly rate of $325, for a total of $176,637.50. In addition, Pollis claims 187.3 hours devoted to the case by Agnes Mendoza, a paralegal, at an hourly rate of $75, for a total of $14,047.50; and Mendoza's 243.6 hours after she became a member of the bar, at an hourly rate of $125, for a total of $30,450. These three components give rise to the total attorney's fee claim of $221,135.

■ A threshold question arises from the submission of these attorney's time sheets in computerized form. The New School says that submission does not satisfy the Second

Circuit's requirement that time records be contemporaneous. *See New York State Association for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1147 (2d Cir.1983). But the Second Circuit decided *Carey* in an earlier decade when computers, if not unknown to law office managers, were not ubiquitous. More recently, the court of appeals has held that contemporaneous time records maintained on a computer base satisfy the requirements of *Carey. Cruz v. Local Union No. 3 of the International Brotherhood of Electrical Workers,* 34 F.3d 1148, 1160 (2d Cir.1994). In another case, where Goodman represented a prevailing plaintiff, Judge Conner accepted Goodman's computerized time records, noting that "[t]he Court routinely receives computerized transcriptions of contemporaneous time records from firms whose billing records are maintained in computers." *Lenihan v. City of New York,* 640 F.Supp. 822, 824 (S.D.N.Y.1986). That is the practice that Goodman says she followed in the case at bar. Letter to Court dated May 16, 1996.

There is, accordingly, no substance to the New School's contention that the attorney's time records submitted on behalf of Pollis in the case at bar are not contemporaneous.

The questions of substance involve Goodman's claimed hourly rate; Mendoza's claimed hourly rates; and the adjustment to be made to Pollis's claim for attorney's fees to reflect the fact that her litigation efforts were only partly successful. I will deal with these issues in order.

### (a) *Goodman's Hourly Rate*

■ Not even the New School denies that Pollis was, at least in part, a "prevailing party" in the district court. To the extent that she succeeded on her Title VII claims, the awarding of "a reasonable attorney's fee" is discretionary. 42 U.S.C. § 2000e–5. To the extent that she succeeded on her EPA claims, the allowance of "a reasonable attorney's fee" is mandatory. 29 U.S.C. § 216(b).

■ The key adjective in both statutes is "reasonable." "In determining reasonable

---

1. These totals reflect Pollis's original submission, plus an additional 8.8 hours of attorney's fees replying to the New School's application for at-torney's fees, and two additional cost items in the amount of $20 and $386.50.

attorney's fees the court must calculate a 'lodestar figure' based upon the hours reasonably spent by counsel ... multiplied by the reasonable hourly rate." *Cruz*, 34 F.3d at 1159 (citations and internal quotations omitted).

■ Whether a particular hourly rate is reasonable depends upon whether it is "in line with those [rates] prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation." *Id.* (citations and internal quotations omitted). The fixing of a reasonable hourly rate for a particular attorney falls within the trial judge's discretion, after the judge has considered "the prevailing marketplace rates for the type of work and the experience of the attorneys." *Cabrera v. Jakabovitz*, 24 F.3d 372, 393 (2d Cir.1994).

■ In the case at bar, Pollis's claim is based upon an hourly rate of $325 for her lead attorney, Janice Goodman. The New School says that this hourly rate is excessive. It calls to my attention *Luciano v. The Olsten Corporation*, 925 F.Supp. 956 (E.D.N.Y. 1996). Judge Spatt of the Eastern District of New York, who presided over a discrimination case in which Goodman represented the successful plaintiff, concluded after a detailed review of cases that a maximum reasonable hourly rate for partners in such cases was $200, "although that rate may vary based on the experience and expertise of the individual." *Id.* at 962. He held that an hourly rate of $225 was reasonable for Goodman's time, "based on the difficulty of the issues presented, the years of experience and expertise of the plaintiff's attorney in the field of employment law, and the extent of the success achieved" *Id.* The plaintiff in *Luciano* had requested an hourly rate of $325 for Goodman's time, as does Pollis in the case at bar.

In letters and affidavit submissions, Pollis says that Judge Spatt was wrong and cites cases purporting to show "that Judge Spatt was using Long Island rather than New York City rates." Letter dated May 20, 1996. In point of fact, the cases in which trial judges attempt to fix reasonable hourly rates for attorneys are legion. They cannot be symmetrically reconciled. At least, I will

not attempt to do so. Rather, I base my conclusion upon a letter Goodman wrote to Pollis on April 16, 1993, explaining the particular fee arrangement which Goodman proposed and to which Pollis agreed. I need not recite the full details of that arrangement. The pertinent sentence in Goodman's letter to Pollis is this: "You understand that in the event that we prevail in obtaining an injunction, I will seek fees from the federal court. The fees that I seek will be at the rate of $275.00 per hour, which is the prevailing rate for attorneys with my experience and background." Quite clearly, Judge Spatt would not go so far; but I am prepared, on this side of the East River, to take Goodman at her own word, and will calculate plaintiff's fee application at the $275 hourly rate for Goodman. I think that this rate is sufficiently on the high side to make it unnecessary to adjust the rate for any inflation that may have occurred during the three years between Pollis's retention of Goodman and the trial.

(b) *Mendoza's Hourly Rates*

■ The time devoted by Agnes Mendoza to the case is charged at two hourly rates: $75 for 187.3 hours Mendoza put in as a paralegal, and $125 for 243.6 hours as an associate attorney in the firm of Goodman & Zuchlewski.

I will limit the fees for Mendoza's time to the paralegal hourly rate of $75. During the trial Mendoza, who had been seated at counsel table, was called as a witness on behalf of plaintiff to testify to the jury about certain calculations that she had made with respect to New School salary rates. Counsel for the New School objected, on the ground that the Code of Professional Responsibility prohibits a lawyer from being called as a witness on behalf of a client. DR 5–102(A), 29 McKinney's Consol.Laws of N.Y. (1992).

At sidebar, Goodman represented to the Court and counsel that the Disciplinary Rule was not implicated, because Mendoza was not an attorney. Rather, Goodman characterized Mendoza as a lesser form of employee who had prepared the calculations which she was called upon to describe in her testimony. On the basis of that representation, I overruled

the New School's objection and permitted Mendoza to testify.

In these circumstances, it would be improper to allow plaintiff to claim compensation for Mendoza at the higher hourly rate of an associate attorney. All her hours will accordingly be allowed at the paralegal rate of $75.

### (c) The Degree of Plaintiff's Litigation Success

The preceding section of this Opinion sets forth the reasonable rates that Pollis may include in her claim for attorney's fees. I will assume for the sake of the present discussion that the number of hours included in the claim is also reasonable, although that point will be revisited under Point III, *infra.*

However, "[t]he product of reasonable hours times a reasonable rate does not end the inquiry." *Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983). In *Hensley,* the Court focused upon "the important factor of the 'results obtained,'" and undertook to instruct trial judges on what to do "where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief." *Id.*

*Hensley* instructs that where a plaintiff presents in one law suit "distinctly different claims for relief that are based on different facts and legal theories," even against the same defendant, so that "counsel's work on one claim will be unrelated to his work on another claim . . . ., no fee may be awarded for services on the unsuccessful claim." 461 U.S. at 434–35, 103 S.Ct. at 1940. On the other hand, where a civil rights case presents only a single claim, or the plaintiff's claim for relief "will involve a common core of facts or will be based on related legal theories," and the plaintiff has obtained "excellent results," the attorney's fee awarded to such a prevailing party may be fully compensatory. "Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient basis for reducing a fee. The result is what matters." *Id.* at 435, 103 S.Ct. at 1940 (footnote omitted).

■ In its continuing discussion at 461 U.S. at 436, 103 S.Ct. at 1941, the Court in *Hensley* used language which seems to me to apply to the case at bar:

> If, on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claim were interrelated, nonfrivolous, and raised in good faith. Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill. Again, the most critical factor is the degree of success obtained.

■ At the end of the trial, Pollis recovered significant amounts on certain of her claims. But the jury rejected her claims for preretirement damages resulting from emotional distress, and for punitive damages. The Court significantly reduced both the economic and equitable demands Pollis made in her proposed judgment.

With respect to the preliminary injunction stage, the Court dismissed Pollis's ADEA claim, and denied her motion for a preliminary injunction. That last factor is, however, arguably reduced by the possibility that the New School was influenced in its treatment of Pollis as an adjunct professor by the language I used, quoted *supra,* in denying the preliminary injunction.

I think that plaintiff's claim that only 27 of Goodman's 570.5 total hours were spent on the ADEA claim is quite unsupportable. Both the ADEA and Title VII claims were pleaded and exhaustively briefed in the preliminary injunction context. Furthermore, not only was the ADEA claim dismissed, the preliminary injunction, which would have kept Pollis on as a fully tenured professor after her 70th birthday, was denied.

Goodman's submissions say that she spent about 110 hours in preparing for and presenting the preliminary injunction motion. She says that all of this time was spent on the Title VII aspect of the motion. However her injunction papers do not support this contention. Applying the *Hensley* factors, I conclude that only one-half of that total, or 55·

hours, may be included in Pollis's claim for attorney's fees. Those hours are compensable at the $275 hourly rate previously decided upon. I make no reduction on this score in the total hours claimed for Mendoza's work at the paralegal rate.

That leaves 433.5 hours of Goodman's time fairly ascribable to remaining discovery, trial preparation, the conduct of the trial, and litigation of the form of this judgment (total hours of 570.5 less 27 hours less 110 hours). Given the jury's rejection of significant and discrete claims made by Pollis, and the Court's rejection or reduction of other claims, I think that a 20% "degree of success" reduction is justified.[2] I will apply the same reduction to the total number of hours charged for Mendoza.

### Other Considerations

In *Luciano v. The Olsten Corp.*, 925 F.Supp. at 964–65, Judge Spatt wrote of Ms. Goodman and her adversary in that case:

Each party draws the Court's attention, in great detail, to instances in which it contends that the other needlessly multiplied the hours spent on this case by uncooperative or obstructive conduct. The Court agrees that this litigation was characterized by a notably high level of contentiousness and lack of cooperation that resulted in excess requests for Court intervention and increased the number of hours spent on the case by the attorneys. The Court was surprised and distressed at the amount of time and energy that each attorney spent criticizing the conduct of the other. While it is not clear that one party or the other was to blame for the contentious nature of any particular event or of the litigation in general, it is clear that both lead attorneys contributed to the highly antagonistic atmosphere that pervaded every aspect of the litigation. The Court declines to compensate counsel for the plaintiff for her share of this unnecessary and stressful litigation.

The Court agrees with the defendants that thirty percent of the effort expended by the attorneys in this action could have been avoided. However, the plaintiff's counsel should not bear the entire burden of what was the product of the conduct of both lead attorneys. Accordingly, the Court find that it is appropriate to reduce the request by hours of 15% as set forth below.

I quote this language because it is, to some degree, reminiscent of the case at bar. Lead counsel for both parties tended to quarrel needlessly, engage in *ad hominem* exchanges, and repeatedly interrupt the trial to make sidebar objections, many of which were lacking in substance. At all stages of the litigation, the briefs of counsel frequently generated more heat than they shed light. There is no question but that the conduct of the litigation by counsel caused a greater expenditure of judicial resources than should really have been necessary.

Accordingly I have considered a further reduction of the fees, based upon Judge Spatt's analysis in *Luciano*. However, unlike the parties in *Luciano*, the parties at bar do not specifically raise this issue; and, in any event, I do not think that the conduct of counsel in this case rises to the level (or sinks to the depths) that so concerned Judge Spatt in *Luciano*. I am also deterred by the awareness that if I reduced the award of plaintiff's attorney's fees on this basis, it would leave the New School's attorneys free to charge their client at unreduced rates, notwithstanding the fact that both lead counsel contributed to the contentiousness of the litigation.

In these circumstances, I will make no further reduction from the award of attorney's fees to Pollis.

### Costs and Expenses

Pollis claims a total of $22,741.92 in costs and expenses. The particular items of that claim conform to the provisions of 28 U.S.C.

---

**2.** The 50% and 20% reductions discussed in text are not based upon the Court's identification of specific hours that should be eliminated. Rather, the reductions reflect the Court's equitable judgment, made in the exercise of its informed discretion. *Hensley* specifically approves that approach at 461 U.S. at 436–37, 103 S.Ct. at 1941, recognizing that "[a] request for attorney's fees should not result in a second major litigation."

§ 1920, as expanded upon the Standing Order of this Court filed on April 20, 1990, or are reasonably related to the successful efforts of Pollis's attorneys.

The New School's objections to plaintiff's claim for costs and expenses are nitpicking, or, if the more formal Latin phrase is preferred, *de minimis.*

Pollis's claim for costs and expenses will be allowed in the amount stated.

### III.

*The New School's Claim for Attorney's Fees and Costs*

The New School requests a total of $37,466 in attorney's fees for time expended on the successful defense of Pollis's ADEA claim, together with an additional $4,842.19 in costs and expenses.

█ Contrary to Pollis's assertion, the New School, in order to recover attorney's fees and costs, need not show that the ADEA claim was both frivolous and brought in subjective bad faith. It is true that in *Sierra Club v. United States Army Corps of Engineers,* 776 F.2d 383, 390 (2d Cir.1985), upon which Pollis relies, the Second Circuit said that the test under the bad faith exception to the American Rule of fees "is conjunctive and neither meritlessness alone nor improper purpose alone will suffice." But *Sierra* was not a civil rights case; the litigation arose out of the Westway project in lower Manhattan, and implicated federal environmental laws. The ADEA is a federal statute attacking age discrimination in the marketplace. In *Hensley,* 461 U.S. at 429 n. 2, 103 S.Ct. at 1937 n. 2, the Supreme Court said:

A prevailing defendant may recover an attorney's fee only where the suit was vexatious, frivolous, or brought to harass or embarrass the defendant. See H.R.Rep. No. 94–1558, p. 7 (1976); *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 421 [98 S.Ct. 694, 700, 54 L.Ed.2d 648] (1978) ("[A] district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a find-

ing that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith").

In *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978), cited and quoted in *Hensley,* the Court said at 422, 98 S.Ct. at 701:

Hence, a plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so. And, needless to say, if a plaintiff is found to have brought or continued such a claim in *bad faith,* there will be an even stronger basis for charging him with the attorney's fees incurred by the defense. (footnote omitted).

Thus it is clear that while litigating in bad faith strengthens a prevailing Title VII defendant's claim against the plaintiff for attorney's fees, it is not an essential ingredient of the claim.[3]

█ Having said this, I am not prepared to hold that Pollis's ADEA claims were "frivolous, unreasonable, or groundless," the pejorative adjectives employed by the Supreme Court in *Christiansburg.*

In pressing her ADEA claims, Pollis argued, *inter alia,* that the New School could not take advantage of the statutory § 12(d) exemption because the institution had not complied with relevant EEOC regulations; and that the New School violated the statute when it refused to grant her application for full-time, non-tenured employment. That latter argument, made in the alternative, assumed the validity of the § 12(d) compulsory retirement. While Pollis's contentions in support of her ADEA claims did not persuade the Court, I do not agree with the New School that those claims and contentions were so frivolous as to entitle the New School to an award of attorney's fees and costs. That claim is accordingly denied.

---

**3.** *Hensley* and *Christiansburg* involved unsuccessful Title VII claims, but no principled reason exists to apply a different rationale to an ADEA claim.

## IV

### Conclusion

It follows that Pollis is entitled to an award of attorney's fees in the amount of $142,289 and costs and expenses totalling $22,235.42. The award of attorneys fees is calculated as follows:

1. Time of Janice Goodman

    (a) Preliminary Injunction
    110 hours less 50% =
    55 hours × $275 =      $ 15,125.00

    (b) Balance of Litigation

    433.5 hours less 20% =
    346.8 hours × $275 =      $ 95,370.00

2. Time of Agnes Mendoza

    187.3 hours plus 243.6 hours =
    430.9 hours less 20% =
    344.72 hours × $75 =      $ 25,854.00
             TOTAL:     $136,349.00

Pollis may recover $22,741.92 in costs and expenses.

The New School's claim for attorney's fees and costs is denied.

Plaintiff is directed to settle a judgment consistent with this and prior opinions on seven (7) days' notice within ten (10) days of the date of this Memorandum Opinion.

In settling that judgment, plaintiff may update appropriate calculations of pre-judgment interest to reflect the further passage of time. The judgment should also provide that it will bear interest at the legal rate from the date of entry until paid.

It is SO ORDERED.