Boston, MA, for Bank of Boston, Appellant and Movant.

Before CONRAD, KAPLAN and HARDIN, Bankruptcy Judges.

## ORDER DIRECTING TRANSFER OF APPEAL TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

### Summary

Boston moves for an order transferring this appeal from the Bankruptcy Appellate Panel Service for the Second Circuit ("BAP") to the United States District Court for the District of Connecticut. We grant the motion because the Notice of Appeal, on its face, unambiguously requested an appeal to the District Court.

### Discussion

■ Boston, on March 5, 1997, timely filed a Notice of Appeal ("the Appeal") with the United States Bankruptcy Court for the District of Connecticut, from a February 26, 1997, ruling of that court. They did not accompany the Appeal by the separate piece of paper specifically noting an election to have the appeal heard by the District Court. BAP Rule 8001.1

Boston threatens in its Motion to Transfer to challenge the validity and enforceability of at least that portion of our rules that require the election to transfer to the District of Connecticut. It argues with much puffery and bravado about the legitimacy of our right to make BAP rules when it appears from the record that they either did not read the BAP rules or plainly flouted it. Alternatively, it is possible Appellant's counsel was not even aware of the BAP and allowed its word processors mindlessly to process a pro forma Notice of Appeal.

■ It is not necessary to our Order today to rule on the right of a judicial tribunal to regulate proceedings before it through local rules, or in this instance the specific requirement for a separate paper. Not to allow the transfer to the District Court when the Appeal unambiguously requested it would exalt form over substance although in some instances form has substance. In this in-stance, the separate paper rule has as a purpose, among many, to relieve the Clerk of the Bankruptcy Court from the duty of having to ascertain by reading the Notice of Appeal to what court an appellant is appealing.

Accordingly, IT IS ORDERED that Appeal No. 97–50013 be transferred to the District Court for the District of Connecticut.

### In re RAYTECH CORPORATION, Debtor.

**Bankruptcy No. 5–89–00293.**

United States Bankruptcy Court, D. Connecticut.

March 31, 1997.

Michael L. Temin, Wolf, Block, Schorr & Solis–Cohen, Philadelphia, PA, for Applicant Wolf, Block, Schorr & Solis–Cohen.

Richard D. Zeisler, Zeisler & Zeisler, Bridgeport, CT, for Applicant Hopkins & Sutter.

Patricia Beary, Assistant United States Trustee, New Haven, CT, for the United States Trustee.

**MEMORANDUM AND ORDER ON UNITED STATES TRUSTEE'S OBJECTION TO FEE APPLICATIONS OF WOLF, BLOCK, SCHORR AND SOLIS–COHEN AND HOPKINS & SUTTER**

ALAN H.W. SHIFF, Chief Judge.

The United States Trustee ("Trustee") has objected to fee applications filed by Wolf, Block, Schorr & Solis–Cohen ("Wolf Block") and Hopkins & Sutter ("Hopkins Sutter"), *see* 28 U.S.C. §§ 581, 586(a)(3)(A), and seeks a determination that compensation for travel time sought by those law firms be denied or, alternatively, be disallowed at the full hourly rate. For the reasons that follow, the travel time will be compensable at the full hourly rate and the Trustee's objections are overruled.

**BACKGROUND**

On March 10, 1989, Raytech Corporation ("Raytech"), a publicly traded company, filed for bankruptcy protection under chapter 11 because of alleged liability as a successor to the asbestos related liabilities of Raymark Industries Inc. It is anticipated that there may be several hundred thousand such claims by personal injury claimants, decedents' representatives, governmental agencies seeking environmental remediation, and others.

To date, plans of reorganization have been filed by Raytech, the committee of unsecured creditors, and the committee of equity security holders. The confirmation path of those plans was initially blocked by litigation which challenged the existence of any successor liability, but that issue has been resolved against Raytech. *See Schmoll v. ACandS, Inc.,* 703 F.Supp. 868 (D.Or.1988), *aff'd* 977 F.2d 499 (9th Cir.1992); *Raytech Corporation v. White,* 54 F.3d 187 (3d Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 302, 133 L.Ed.2d 207 (1995). Notwithstanding that determination, the extent of Raytech's successor liability must still be litigated, *see Raytech Corporation v. Official Committee of Unsecured Creditors, et al.,* Adversary Proceeding No. 96–5181, along with several other complex issues, including the establishment of a bar date procedure for asbestos and non-asbestos claimants, before this case can finally get to the issue of whether a plan can be confirmed. That brief description of this multifaceted case is made to underscore the observation that the principal constituencies will need and fortunately have retained highly skilled and experienced professionals to represent their respective interests.

A committee of unsecured creditors, comprised primarily of asbestos claimants' attorneys, was formed pursuant to § 1102(a)(1) ("Creditors' Committee") and was authorized under § 1103(a) to employ Wolf Block as its co-counsel on May 25, 1989. Wolf Block remained counsel to the Creditors' Committee until September 13, 1996, when Caplin & Drysdale was substituted by the order of this court. A committee of equity security holders ("Equity Committee") was appointed by the Trustee on July 26, 1995 pursuant to § 1102(a)(2). On December 22, 1995, an order entered granting the amended application of the Equity Committee *nunc pro tunc* to appoint Hopkins Sutter as its counsel.

Between May 1, 1989 and June 15, 1996, Wolf Block submitted eleven applications for interim compensation, *see* 11 U.S.C. § 331. Orders entered on each which awarded Wolf Block a percentage of the amount it sought, resulting in an aggregate "hold back" of $188,759.79 for fees and $9,696.30 for reimbursement of expenses. On July 25, 1996, Wolf Block filed an application for payment of the amounts held back ("Wolf Block's Hold–Back Application"). Of the amount held back, $75,888.00, representing 239 hours, *see infra*, billed at the full hourly rate, is related to travel time. On September 25, 1996, Wolf Block filed a Twelfth Application for final compensation, *see* § 330(a), seeking the allowance of fees of $90,840.80 and reimbursement of expenses of $5,248.36 for May 1, 1996 through September 13, 1996 ("Twelfth Application"). Of the total amount requested, $17,219.00, representing 51.4 hours billed at the full hourly rate, is related to travel time.

It is noted that the Trustee and Attorney Temin stipulated at trial that the travel time at issue totaled 335.9 hours: 284.5 hours from Wolf Block's Hold Back Applications and 51.4 hours from its Twelfth Application *Trial, 12/19/96, Tape 1 at # 2343—2354; see also* Wolf Block's *Exh. B.* The 284.5 hours appear to be the sum of all the entries relating to travel time contained in Wolf Block's first eleven applications. In some instances, however, those entries combine travel time with preparations for meetings and attendance at meetings. *See e.g.,* Wolf Block's

First Application, Second Application, Fourth Application, and Fifth Application. After reviewing the applications and Wolf Block's *Exh. B,* it is concluded that 239 hours correctly reflect the actual total travel time sought by Wolf Block in its Hold Back Application. The remaining 45.5 hours, included in that application and opposed by the Trustee as travel time, are compensable. Thus, the aggregate travel time opposed by the Trustee is 290.4 hours billed at $93,107.00.

Hopkins Sutter filed two applications for interim compensation for the periods between June 7, 1995 and April 30, 1996. Orders entered on each which held back fees of $43,096.90 and expenses of $2,089.06. On August 14 1996, Hopkins Sutter filed an application for the payment of the amounts held back ("Hopkins Sutter's Hold Back Application"). Of the total amount requested, $16,-800.00, representing 48 hours billed at the full hourly rate, is related to travel time and is opposed by the Trustee.

The Trustee argues that travel time should be entirely disallowed as overhead to each firm and should not be compensable under code §§ 330(a) and 331. *See also Trustee's Amended Objection to Twelfth Application* at 3; *Trustee's Objection to Wolf Block's Hold Back Application* at 3; *Trustee's Objection to Hopkins Sutter's Hold Back Application* at 2. In the alternative, she argues that if travel time is compensable, compensation should not be awarded at the full hourly rate. *Trustee's Pre–Trial Memorandum* at 5. Wolf Block and Hopkins Sutter counter that they should be compensated at their full hourly rate, which is the rate they bill to nonbankruptcy clients, for travel time that was actual, necessary, and reasonable as authorized by § 330(a). *Hopkins Sutter's Memorandum* at 2–5; *Drabkin Testimony, 12/19/96, Tape 1 at # 340; Wolf Block's Pre–Trial Memorandum* at 2–5; *Temin's Testimony, 12/19/96, Tape 1 at # 1450—1551.*

## DISCUSSION

Code § 330 provides:

(a)(1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to ... a profes-

sional person employed under section 327 or 1103—

(A) reasonable compensation for actual, necessary services rendered by the ... attorney; and

(B) reimbursement for actual, necessary expenses.

(2) The court may ... on the motion of the United States Trustee, ... award compensation that is less than the amount of compensation that is requested.

(3)(A) In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

(E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a) (West 1997).

Code § 331 provides:

... any professional person employed under section 327 or 1103 of this title may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered before the date of such an application or reimbursement for expenses incurred before such date as is provided under section 330 of this title.

After notice and a hearing, the court may allow and disburse to such applicant such compensation or reimbursement.

11 U.S.C. § 331 (West 1993).

█ It is well settled that both the time expended and the rate billed must be reasonable, *Blanchard v. Bergeron,* 489 U.S. 87, 96, 109 S.Ct. 939, 945, 103 L.Ed.2d 67 (1989), *see also Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983), and that a fee applicant has the burden of proving that its application is justified, *see Riley v. City of Jackson, Mississippi,* 99 F.3d 757, 760 (5th Cir.1996). However, "[t]here is no precise rule or formula for making these determinations ... [and] [t]he court necessarily has discretion in making this equitable judgment." *Hensley v. Eckerhart, supra* at 436, 103 S.Ct. at 1941. *See also Cruz v. Local Union No. 3 of Intern. Broth. of Elec. Workers,* 34 F.3d 1148, 1159 (2d Cir.1994) (citation and internal quotations omitted).[1] The *Hensley Court* also observed that "[a] request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart, supra* at 437, 103 S.Ct. at 1941.

█ The Court of Appeals for this circuit has not directly examined the issue of whether travel time should be compensable at the full hourly rate. However, in the context in which that court has addressed the issue, it is clear that there is no *per se* prohibition on compensation for travel time in this circuit. *See Cruz v. Local Union No. 3 of Intern. Broth., supra,* 34 F.3d at 1161. In *Cruz,* the district court allowed attorney's fees but eliminated all hours relating to travel time. The Court of Appeals held that the elimination of all travel time was "error" and remanded the issue for reconsideration, holding that "[t]he touchstone in determining whether hours have been properly claimed is reasonableness, made by reference to standards established in dealings between paying

---

1. The Second Circuit Court of Appeals has stated that in determining attorney's fees, "the court must calculate a 'lodestar' figure based upon the hours reasonably spent by counsel ... multiplied by the reasonable hourly rate." *Cruz v. Local Union No. 3 of Intern. Broth., supra,* 34 F.3d at 1159 (citation and internal quotations omitted).

The lodestar figure, or reasonable value of attorney services, is, however, not at issue here because the rates of compensation billed generally by Wolf Block and Hopkins Sutter are not challenged by the Trustee or any other party. Instead, the Trustee objects to those rates as they relate to travel time.

clients and the private bar." *Id.* (citation and internal quotations omitted).[2] Accordingly, the Trustee's *per se* objection that travel should not be compensated will be overruled.

The Trustee's alternative objection challenges the reasonableness of the applications but does not claim that the itemized travel was unnecessary. Rather, she argues that Wolf Block spent too much time traveling to and from court and other related appointments and that neither Wolf Block nor Hopkins Sutter should have billed travel time at their full hourly rate. It is noted that neither Raytech nor any other party in interest has objected to the compensation for travel time sought by these law firms.

### Reasonable time

▪ The Trustee argues that Attorney Temin of Wolf Block frequently traveled by train when air travel might have been faster and therefore cheaper. *Trial, 12/19/96, Tape 1 at # 2216–2292.* Attorney Temin responds that in each instance of travel, he chose the mode of transportation that was most economical and most likely to get him to a scheduled hearing or appointment on time. The Trustee has offered no evidence that the mode chosen by Attorney Temin was inefficient or unreasonable, and has instead relied upon her observation that air travel would have been faster and that, on occasion, Attorney Temin spent too much time waiting for transportation to the train station. In response, Attorney Temin noted that travel by train avoided the risk of weather related delays.

Wolf Block seeks compensation for trips from Philadelphia, Pennsylvania to Washington, D.C. for mediation, meetings with the Department of Justice regarding environmental issues, and meetings with the Equity Committee; to New York City for mediation and meetings with the Creditors' Committee; to Bridgeport for court appearances; to Westport for meetings with Meadowcroft Associates, Inc., the financial advisor to the Creditors' Committee; to New Haven for meetings with the Fee Review Committee; and to Hartford for depositions and court appearances in the District Court. *See Wolf Block's Pre–Trial Memorandum at 1–2; Temin Testimony, 12/19/96, Tape 1 at # 1381–1430.*

Hopkins Sutter billed for 11 trips for a total of 48 hours for the periods between June 7, 1995 and April 30, 1996. *See Hopkins Sutter's Memorandum at 2 and Exhibit A; Compliance with Pretrial Procedure at 2.* Six of those trips involved travel from Washington, D.C. to attend mediation sessions in New York City. Two trips were made to New Haven for the same purpose. Another trip was made to New York City to participate in a negotiation session with personnel of Raytech. The remaining two trips were from Washington, D.C. to Bridgeport and New Haven to attend court proceedings. *Drablin Testimony, 12/19/96, Tape 1 at # 423–482.* The Trustee has not questioned the reasonableness of the travel time itemized in Hopkins Sutter's applications.

Having considered the evidence offered in support of Wolf Block's Hold Back Application and its Twelfth Application and Hopkins Sutter's Hold Back Application, and the arguments of counsel, it is determined that 290.4 hours of travel time billed by Wolf Block and 48 hours of travel time billed by Hopkins Sutter were reasonable, necessary, and compensable and that time will be multiplied by a reasonable rate.

### Reasonable rate

▪ There is a split of authority on the appropriate rate of compensation for travel time. Some courts have held that travel time may be compensable at the full hourly rate. *See e.g., Gonzalez v. Town of Stratford,* 830 F.Supp. 111, 115 (D.Conn.1992) ("The court ... rejects the argument that counsel should not be compensated at their standard rates

---

**2.** Local Rule 25(a)(5) provides that "[t]he general costs of doing business, such as ... travel to and from court, will not be allowed...." That provision has been eliminated by the proposed Local Rules of Bankruptcy Procedure. Moreover, Wolf Block and Hopkins Sutter offered testimony that the travel time charged here was not treated by them as a cost of doing business, but rather as billable hours to be paid by their respective clients. *Temin's Testimony, 12/19/96, Tape 1 at # 1493; Drablin's Testimony, 12/19/96, Tape 1 at # 568.*

for time spent traveling to court"); in *In re Braddy*, 195 B.R. 365, 368 (Bankr.E.D.Mich. 1996) (footnote omitted), the court held that:

... under 11 U.S.C. § 330, the compensation to which an attorney ... is entitled includes compensation at the attorney's full hourly rate for travel time that is: (1) actually spent for travel; (2) a reasonable time considering the distance travelled [*sic*]; (3) necessary in the sense that the travel was required in connection with the bankruptcy court process; and (4) beneficial in the sense that the legal services for which the travel was undertaken advanced the administration of the estate.

Other courts have concluded that the rate of compensation should be half of the usual rate for nonproductive travel time. *See e.g., Cooley v. Arena*, No. 90–CV–603, 1996 WL 494983, at *4 (N.D.N.Y. Aug. 29, 1996); *Lilly v. County of Orange*, 910 F.Supp. 945, 951 (S.D.N.Y.1996) (where counsel drove himself to appointments and conferences, it is "appropriate to reduce attorney's fees for travel time by 50% for lack of productivity"). In response to the argument that travel time must be productive to be fully compensable, the court in *In re Frontier Airlines, Inc.* stated:

Travel time must be distinguished from nonproductive time spent in the office. As to travel time, the question is not whether the time spent traveling was nonproductive, but rather whether the travel time was reasonable and necessary. If the trip was necessary, then the time spent in making the trip was a part of the total time necessary for the performance of the professional services which were rendered. By contrast, if the professional spends three hours in the office performing a task which should only have taken one hour, the surplus time was not necessary and could have been avoided. Comparing nonproductive office time to travel time is not possible since one is under the control of the professional, but the other is not only not under his control, it is inherently necessary in order for him to provide the services required.

*In re Frontier Airlines, Inc.*, 74 B.R. 973, 979 (Bankr.D.Colo.1987). Further, "[a]ttor-

neys may not be as productive while traveling [*sic*], but § 330(a)(1) does not demand that productivity be considered when awarding fees. Instead, as long as travel is necessary and the rate is reasonable, that provision is satisfied." *Matter of Cano*, 122 B.R. 812, 814 (Bankr.N.D.Ga.1991). This court is persuaded by those well reasoned decisions and will apply that result in this case.

It has been noted *supra* at 6, that there is no *per se* rule in this circuit prohibiting compensation for travel time, and that the rate of compensation is within the discretion of the court, *see Hensley v. Eckerhart, supra*, 461 U.S. at 437, 103 S.Ct. at 1941; *Luciano v. Olsten Corporation*, 109 F.3d 111, 114 (2d Cir.1997); *Cruz v. Local Union No. 3 of Intern. Broth., supra*, 34 F.3d 1148, 1159, which extends to awarding travel time at the full hourly rate. *See e.g., Bridges v. Eastman Kodak Company*, No. 91 CIV 7985, 1996 WL 47304, at *8 (S.D.N.Y. Feb. 6, 1996), *aff'd* 102 F.3d 56 (2d Cir.1996); *Jennette v. City of New York*, 800 F.Supp. 1165, 1170 (S.D.N.Y.1992). It has also been noted *supra* at 7, that the travel time enumerated in the subject applications, as modified *supra* at 3, was reasonable and necessary. The remaining issue, i.e., the reasonable rate of compensation, is resolved in favor of the applicants.

The conclusion that travel time in the Wolf Block and Hopkins Sutter applications should be compensated at their full hourly rate is supported by policy concerns and the legislative history of § 330. A party in interest should be able to retain representation of its own choosing, *see In re Caldor, Inc.*, 193 B.R. 165, 170 (Bankr.S.D.N.Y.1996) ("Public policy favors permitting parties to retain professionals of their choice"). That choice is of course subject to court approval which may be withheld due to ethical or other considerations raised by parties in interest or by the court *sua sponte*. Bankruptcy is a specialized area of the law. The meaning of code sections is sometimes subtle, the timing of critical events is often urgent, and the negotiation process at the core of the chapter 11 reorganization process is usually delicate. Bankruptcy law must be able to attract the best legal talent. Nowhere is that more

apparent than in a complex chapter 11 case such as this.

It is highly unlikely that an attorney who, due to experience, skill, and reputation, charges fees at a high hourly rate for legal services and the travel time that is reasonable and necessary for the performance of those services, will be attracted to an area of the law where that travel time will be paid at a lower rate. Such a disincentive will unfairly limit the qualified rights of clients to choose attorneys in bankruptcy cases, and perhaps of greater concern, it will interfere with the rehabilitation prospects of debtors hoping to continue in business. That result is clearly not contemplated by the drafters of the code:

> Bankruptcy specialists, who enable the system to operate smoothly, efficiently, and expeditiously, would be driven elsewhere, and the bankruptcy field would be occupied by those who could not find other work and those who practice bankruptcy law only occasionally almost as a public service. Bankruptcy specialists, ... if required to accept fees in all of their cases that are consistently lower than fees they could receive elsewhere, will not remain in the bankruptcy field.

H.R.Rep. No. 95–595, 1st Sess. at 697 (1977). Moreover, "[w]hen a lawyer travels for one client he incurs an opportunity cost that is equal to the fee he would have charged that or another client if he had not been traveling." *Gonzalez v. Town of Stratford, supra,* 830 F.Supp. 111, 115, *quoting Henry v. Webermeier,* 738 F.2d 188, 194 (7th Cir.1984) (internal quotation marks omitted).

In promulgating § 330, Congress intended to nullify any distinction in the area of compensation between bankruptcy attorneys and their nonbankruptcy counterparts:

> ... Attorney's fees in bankruptcy cases can be quite large and should be closely examined by the court. However bankruptcy legal services are entitled to command the same competency of counsel as other cases. In that light, the policy of this section is to compensate attorneys and other professionals serving in a case under title 11 at the same rate as the attorney or other professional would be compensated for performing comparable services other than in a case under title 11 . . . .

124 Cong.Rec. H11089 (1978) (statement of Rep. Edwards); 124 Cong.Rec. S17406 (1978) (statement of Sen. DeConcini). *See also* 11 U.S.C. § 330(a)(3)(E); *In re Busy Beaver Bldg. Centers, Inc.,* 19 F.3d 833, 850 (3rd Cir.1994) ("Congress determined, it appears, that on average the gain to the estate of employing able, experienced, expert counsel would outweigh the expense to the estate of doing so, and that unless the estate paid competitive sums it could not retain such counsel on a regular basis").

This decision is not intended to establish a rule that in all cases before this court, all time expended in necessary travel will be compensable at the full hourly rate. Each application will be analyzed on its particular merits.

## ORDER

For the foregoing reasons,

IT IS ORDERED that the Trustee's Objection to Wolf Block's Holdback Application and its Twelfth Application is overruled;

IT IS FURTHER ORDER that the Trustee's Objection to Hopkins Sutter's Holdback Application is overruled;

IT IS FURTHER ORDERED that Wolf Block shall be awarded fees of $93,107.00 representing travel time; and

IT IS FURTHER ORDERED that Hopkins Sutter shall be awarded fees of $16,-800.00 representing travel time.