**In re RAYTECH CORPORATION.**

**No. 3:97CV927 JBA.**

United States District Court,
D. Connecticut,
New Haven Division.

Aug. 13, 1999.

Andrew M. Dipietro, Jr., DiPietro, Kantrovitz & Brownstein, New Haven, CT, Robert S. Evans, New Haven, CT, for Raytech Corp.

Patricia Beary, New Haven, CT, U.S. Trustee.

Robert S. Evans, New Haven, CT, for Official Committee of Unsecured Creditors.

Michael L. Temin, Wolf, Block, Schorr & Solis-Cohen, Philadelphia, PA, for Wolf, Block Schorr & Solis-Cohen.

Richard D. Zeisler, Zeisler & Zeisler, P.C., Bridgeport, CT, for Hopkins & Sutter.

### MEMORANDUM AND ORDER

ARTERTON, District Judge.

In this appeal, the United States Trustee ("U.S. Trustee") challenges as error the bankruptcy court's order approving compensation for travel time awarded at the full hourly rate in connection with fee applications submitted under 11 U.S.C. § 330 by Wolf, Block, Schorr and Solis–Cohen ("Wolf Block") the law firm that previously represented the unsecured creditors' committee, and Hopkins and Sutter ("Hopkins Sutter"), the law firm currently representing the equity holder's committee.

For the following reasons, the order of the bankruptcy court is VACATED and

REMANDED for further proceedings consistent with this ruling.

## Factual Background of Fee Applications

The debtor Raytech Corporation voluntarily filed its Chapter 11 petition on March 10, 1989 in Connecticut as successor to the asbestos-related claims against Raymark Industries Inc. expected to be filed by personal injury claimants, decedents' representatives, governmental agencies seeking environmental remediation and others.

On May 25, 1989, a committee of the debtor's unsecured creditors, comprised of asbestos claimants' attorneys was formed and authorized to employ the Philadelphia law firm of Wolf Block as its counsel under 11 U.S.C. 1103(a). Wolf Block remained counsel for the unsecured creditor's committee through September 13, 1996 when Caplin and Drysdale was substituted by order of the bankruptcy court. Wolf Block submitted its final fee application pursuant to 11 U.S.C. § 331 to recover for travel time as well as the amounts which were previously "held back" from its eleven earlier interim fee applications filed between May 1, 1989 and June 15, 1996. The amounts "held-back" were substantially all related to Wolf Block's travel time for trips between Wolf Block's Philadelphia office and Washington, D.C., New York City, Westport, CT and Hartford, CT for various court appearances, hearings and mediation meetings. Wolf, Block sought compensation for such travel time at its full hourly rates charged for legal services.

Separately, the U.S. Trustee appointed a committee of equity security holders on July 26, 1995 under 11 U.S.C. 1102(a)(2). On December 22, 1995, the bankruptcy court entered an order nunc pro tunc granting the equity committee's application to retain Hopkins Sutter from Washington, D.C. as its counsel. Subsequently, Hopkins Sutter filed two applications for interim compensation for the period covering June 7, 1995 to April 30, 1996. In granting these interim awards, the court ordered a portion of the amount awarded representing that portion of Hopkins Sutter's fees to date attributed to its travel time to be held back. On August 14, 1996, Hopkins Sutter filed an application for the payment of amounts held back for its travel time seeking compensation at its attorneys' respective full hourly rates.

## Bankruptcy Court Ruling

*In re Raytech Corp.,* 206 B.R. 646 (Bankr.D.Conn.1997), the bankruptcy court awarded Wolf Block, $93,107, and Hopkins Sutter, $16,800, calculated as the total amount of time spent by counsel from these firms in transit, multiplied by their full hourly rate. The bankruptcy court overruled the U.S. Trustee's objection that travel should not be compensated as a matter of law under 11 U.S.C. § 330 and § 331, or should be awarded at a reduced hourly rate or reduced for unreasonable number of hours expended.

## District Court Jurisdiction over Appeal

It is undisputed that this Court has jurisdiction over this appeal with respect to Wolf Block's final fee application under 11 U.S.C. 330, as a final fee award under 28 U.S.C. § 158(a).

Hopkins Sutter contends however that this Court lacks jurisdiction over the appeal with respect to its interim fee application under 11 U.S.C. § 331 as premature and more appropriately considered as part of Hopkins Sutter's final fee application under 11 U.S.C. § 330. Although the U.S. Trustee failed to request leave of this Court or the bankruptcy court to file this interlocutory appeal as required under 28 U.S.C. § 158(a), Bankr.Rule 8003(c) expressly provides that the district court may nevertheless grant leave to appeal even where no motion for leave has been filed. *Escondido Mission Village v. Best Products Co.,* 137 B.R. 114, 117 (S.D.N.Y. 1992). Because the parties have fully briefed this issue of travel compensation which remain an issue in Hopkins Sutter's future interim and final fee applications, the Court grants leave to appeal under 11

U.S.C. § 158(a) since the identical issue is under review in the Wolf Block application. This approach will facilitate the ultimate termination of the litigation and avoid resolving the identical issue in a piecemeal fashion.

## Standard of Review

Bankruptcy courts enjoy wide discretion in determining reasonable fee awards, which discretion will not be disturbed by an appellate court absent a showing that it was abused. *In re JLM, Inc.,* 210 B.R. 19 (2nd Cir. BAP 1997). Such discretion may be abused by failing to apply proper legal standards, by failing to follow proper procedures, or by basing the award on findings of fact that are clearly erroneous. *See (In re Williams); AT&T Universal Card Services Corp. v. Williams,* 224 B.R. 523 (2nd Cir. BAP 1998).

## Discussion

The sole issue raised by this appeal is whether the bankruptcy court abused its discretion either by application of an incorrect legal standard or by clearly erroneous findings of fact in compensating these firms at their full hourly rate for all time claimed to have been expended traveling in connection with representation in this bankruptcy case.

The bankruptcy court correctly found "there is no per se prohibition on compensation for travel time in this circuit," *In re Raytech Corp.,* 206 B.R. 646, 649, and that the "touchstone in determining whether hours have been properly claimed is reasonableness, made by reference to standards established in dealings between paying clients and the private bar." *Id.* (citations omitted). The bankruptcy court expressly declined to establish a rule that "all time expended in necessary travel will be compensable at the full hourly rate," and limited its finding to the pending applications. *Id.* at 651 ("Each application will be analyzed on its particular merits.").

In awarding these firms their full hourly rate for their nonproductive, nonlocal travel time, the bankruptcy court separately considered the reasonableness of the hours expended in travel, and then the reasonableness of the rate to be applied to travel time. As a general rule, attorneys' fees are determined by first calculating the lodestar, defined as "[t]he number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Sands v. Runyon,* 28 F.3d 1323, 1333 (2d Cir.1994). The bankruptcy court found that the total hours of travel time billed, 290.4 hours by Wolf Block and 48 hours by Hopkins Sutter, was "reasonable" crediting the Wolf Block attorney's testimony that transportation by train was chosen since it was most economical, most likely to get the attorneys to the hearing or appointment on time, and avoided the risk of weather-related delays, rejecting the U.S. Trustee's objections that some of the travel time was excessive. Under these circumstances and after a careful review of the record, the court concludes that the bankruptcy court's factual finding that the number of hours expended in travel by each firm was reasonable was not clearly erroneous.

In analyzing the reasonableness of the rate to be applied to these admittedly nonproductive travel hours, (*see* Testimony of Temin Tr. at 29, Hearing of Dec. 19, 1996), (noting the difficulty of working on any client's file while in transit, recalling that during his last train trip two young children "ke[pt] yelling at the top of their lungs for the entire trip."), the bankruptcy court first acknowledged the split of authority on the appropriate rate of compensation for nonproductive travel time in both bankruptcy and non-bankruptcy cases, but concluded that compensation to these firms at their full hourly rate, approximately $320 for Wolf Block and $350 for Hopkins Sutter, was a means of advancing the policy concerns and legislative history of Section 330 of the Bankruptcy

Code. Specifically, the bankruptcy court found that such a "complex chapter 11 case" involving a highly specialized field of law, demanding rapid attention and at times delicate negotiations "must be able to attract the best legal talent." *In re Raytech Corp.*, 206 B.R. at 651. The bankruptcy court also found that awarding full hourly compensation for travel was consistent with one of Section 330's purposes, namely to eliminate any distinction between compensation for bankruptcy attorneys and their non-bankruptcy counterparts. *Id.* at 652. Finally, the bankruptcy court observed that compensation for travel time would mitigate the lost opportunity cost incurred when the attorney travels for one client, and is unable to charge another client. *Id.*

In bankruptcy cases which have awarded attorneys their full hourly rate for nonproductive travel time, the bankruptcy courts expressly found that such billing practice was customary in the legal service market in the area for non-bankruptcy cases. *See e.g., In re Braddy*, 195 B.R. 365, 367 (Bankr.E.D.Mich.1996) (permitting debtor counsel full hourly rate for travel time where "it is customary in the legal services market in this area for attorneys in non-bankruptcy cases to charge the full hourly rate."); *In re Cano*, 122 B.R. 812, 814 (Bankr.N.D.Ga.1990) ("Non-bankruptcy attorneys typically bill their travel time at their full hourly rate....."); *In re Frontier*, 74 B.R. 973 (Bankr.D.Colo. 1987) (same).

While there is no theoretical bar to compensating a bankruptcy attorney at his or her full hourly rate for nonproductive travel time, such award should take "into account all relevant factors, including—... (E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title." 11 U.S.C. § 330(a) (1997). Similar to the inquiry governing attorney fee awards in non-bankruptcy cases, the point of reference is whether attorneys in the relevant market or community are customarily compensated at their full hourly rate for such nonproductive travel time by their clients. *In re Masterwear Corp.*, 233 B.R. 266, 278 (Bankr.S.D.N.Y.1999) ("The reasonable hourly rates are the prevailing rates for similar services by lawyers of reasonably comparable skill, experience and reputation in the relevant market.")

As both parties agreed at oral argument, Section 330 does not alter the traditional "lodestar" analysis, which typically defines the "prevailing community" for purposes of determining the lodestar figure as the district in which the district court sits unless there is a showing that special expertise of counsel from a different district was required. *Cruz v. Local Union Number 3, Int'l Brotherhood of Elect. Workers*, 34 F.3d 1148, 1159 (2d Cir.1994). In awarding these firms their full hourly rates for nonproductive travel time, however, the bankruptcy court failed to consider whether other attorneys in the relevant market customarily charge their non-bankruptcy clients their full hourly legal service rate for nonproductive travel time, and only considered the practices of the applicant attorneys. In fact, there was no finding with respect to the relevant legal market, nor was there any record contained in the application or established at the hearing with respect to travel billing practices in that market. While the applicant firms contend that such an analysis by the bankruptcy court can be assumed to have been made based on the bankruptcy court's own familiarity with such practices from reviewing numerous fee petitions or its review of the caselaw, they acknowledge, as they must that no such analysis or finding was reflected in the bankruptcy court's ruling.

To demonstrate achievement of one of the purposes of Section 330—elimination of differentials between bankruptcy and non-bankruptcy attorneys, it was necessary for the bankruptcy court to have made a factual determination of the customary billing practices of non-bankruptcy

attorneys in the relevant market for similar services, namely nonproductive attorney travel time. Here, the record before the bankruptcy court established only these two firm's billing practices as to travel time, which was equivocal at best. (*See e.g.*, Testimony of Drabkin, Tr. at 8, Hearing of Dec. 19, 1996, conceding that even though he "normally" bills clients on a portal-to-portal basis, "there's always an element of reasonability.") Conversely, Section 330 does not authorize the bankruptcy court to award attorney fees for services otherwise not borne by private non-bankruptcy clients. A cursory review of non-bankruptcy fee petitions in the Second Circuit suggests that nonproductive travel time is typically discounted. *See e.g., Cruz. v. Local Union Number 3, Int'l Brotherhood of Elect. Workers*, 34 F.3d 1148, 1161 (2d Cir.1994) (noting with approval travel time compensated at 50% of full hourly rate); *Mr. X. v. New York State Educ. Dept.*, 20 F.Supp.2d 561, 564 (S.D.N.Y.1998) (observing in context of attorneys fee petition filed by prevailing plaintiff in IDEA case that "[c]ourts in this circuit generally reimburse attorneys for travel time at 50% of their hourly rates."); *Funk v. F & K Supply, Inc.*, 43 F.Supp.2d 205(N.D.N.Y.1999) (noting same in Title VII case).

The appropriate benchmark by which to measure these attorneys' lost "opportunity cost" is not what they might have charged another client for a fully productive hour of work, but what is customarily charged by attorneys for similar nonproductive travel time. Pegging a reasonable hourly rate to that paid by clients for similar services in the relevant non-bankruptcy legal market, provides the bankruptcy court with assurance that the estate is paying competitive, but not premium prices and that the legislative non-discrimination purpose is thereby advanced. Presumably, such competitive pricing includes practical considerations usually incorporated by attorneys exercising their "billing judgment" (to avoid or in response to a challenge by a private client) which is un-

likely to be captured by simply applying the attorney's full hourly rate to the entirety of travel time incurred.

### Conclusion

In the absence of any finding by the bankruptcy court that attorneys in the relevant legal market would be compensated at their full hourly rate for their nonproductive travel time, the Court cannot determine whether the award by the bankruptcy court resulted from the proper legal analysis required under Section 330 or the lodestar method to determine a reasonable rate. Accordingly, these attorney fee awards must be vacated and the applications remanded for further proceedings to determine the customary billing practice for nonproductive travel time in the "prevailing community."

IT IS SO ORDERED.