**Charlie GREEN a/k/a Charles Green, Plaintiff,**

**v.**

**Ray GRONEMAN, Thomas Lasarde, Riverhead Town Police Department, and Town of Riverhead, Defendants.**

**No. 07CV1980 (ADS) (ETB).**

United States District Court, E.D. New York.

June 25, 2009.

Joseph A. Solow, Esq., Hauppauge, NY, for Plaintiff.

Thomas C. Sledjeski & Associates, PLLC, by Brian A. Andrews, Esq., of counsel, Riverhead, NY, for Defendants Town of Riverhead, Ray Groneman, and Thomas Lasarde.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge:

### I. BACKGROUND

This action arises out of a weapon discharge occurring on the morning of May 15, 2004, and the subsequent detention and search of the plaintiff, Charlie Green, by members of the Riverhead Town Police Department in connection with their investigation of this incident. The complaint in this action alleged that at about 9:00am on the day in question, the defendant police officers, as well as other unidentified police officers entered the plaintiff's barber shop business and in the presence of his employees and customers, asked the plaintiff to step outside. In addition, the plaintiff contended that, without permission, the police officers twice conducted a thorough search of his person, requiring him to first place his hands on a police car in clear view of his customers, employees, as well as other passers by.

The plaintiff alleged that, thereafter, the officers placed him into a parked police car until they could conduct a drive-by identification procedure during which an eyewitness failed to identify the plaintiff as the assailant in the crime under investigation. After the first witness failed to identify the plaintiff, the officers retained him in custody, whereupon another identification procedure was conducted. This time, the victim of the shooting failed to identify the plaintiff as the assailant.

In addition, the plaintiff alleged that during the time in which he was being searched, restrained and held in custody, the officers conducted a warrantless search of his barber shop without his con-

sent and in view of his customers and employees.

The plaintiff claimed that the warrantless searches and arrest violated his constitutional rights. Further, the plaintiff claimed liability on the part of the Town of Riverhead in accordance with *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) for failure to adequately train its police force regarding the subjects of arrests and detainments of individuals and searches and seizures of persons and property. The plaintiff's claimed damages in the form of emotional distress stemming from these alleged constitutional violations.

The matter proceeded to trial before a jury lasting three trial days on January 6, 7, and 8, 2009. Following summations and charge, the jury retired to the jury room to conduct deliberations. Approximately twenty minutes after beginning deliberations, at 3:30pm, the Court received a note requesting a written copy of the instructions and charge. (*See* Court Exh. 1). Approximately ten minutes later at approximately 3:40pm, before the written charge was delivered to the jury, another note followed stating that the jury had reached a verdict. (*See* Court Exh. 2).

Presently before the Court is the plaintiff's motion for a new trial pursuant to Federal Rule of Civil Procedure 59 ("Fed. R. Civ. P.") or for judgment as a matter of law pursuant to Fed.R.Civ.P. 50. The plaintiff contends that (1) the jury flippantly disregarded its duty to conscientiously and competently deliberate upon the evidence and testimony, and (2) the jury's verdict was in any event manifestly erroneous in light of the evidence.

## II. DISCUSSION

1. *As to the Plaintiff's Motion for a New Trial*

■ Aside from citing the short period of deliberations, the plaintiff contends that the fact that the jury specifically requested a written copy of the Court's instructions is an indication that the jury believed that it could not commence conscientious deliberations without those written instructions. Further, the plaintiff contends that the jury's vote and verdict within ten minutes of their request and before the Court could reasonably supply its instructions is a clear indication that the jury flippantly disregarded its duty to conscientiously embark and proceed upon its deliberative process.

At the outset, the Court notes that "[b]rief deliberation, by itself, does not show that the jury failed to give full, conscientious or impartial consideration to the evidence." *Wilburn v. Eastman Kodak Co.*, 180 F.3d 475, 476 (2d Cir.1999) (upholding denial of new trial motion where trial court found that twenty minute deliberation did not show that the jury had failed to follow its instruction to give full and conscientious attention and consideration to the issues and evidence); *see also United States v. Thomas*, 116 F.3d 606, 620 (2d Cir.1997) ("The mental processes of a deliberating juror with respect to the merits of the case at hand must remain largely beyond examination and second-guessing, shielded from scrutiny by the court as much as from the eyes and ears of the parties and the public.").

In *Celebrity Cruises Inc. v. Essef Corp.*, 478 F.Supp.2d 440 (S.D.N.Y.2007), the court, although granting a new trial on other grounds, denied the defendant's motion for a new trial on the ground that the jury deliberated only briefly and rendered its decision without waiting to review certain evidence it had requested. *Id.* at 455. The Court explained that it is not "inappropriate to take a verdict without providing information previously requested by the jury, particularly where the jury has indicated that it no longer wishes to review that evidence." *Celebrity*, 478 F.Supp.2d

at 455 (citing *United States v. Young*, 140 F.3d 453, 456–57 (2d Cir.1998) (finding no plain error where judge received verdict before having an opportunity to respond to jury's readback request)).

Here, there is no indication that the jury "flippantly" disregarded its duty to deliberate conscientiously and weigh the evidence. The jury verdict found: (1) that the plaintiff did not prove that the search of his person outside of his barber shop by the defendant Groneman was an "unreasonable" search; (2) that the plaintiff did not prove that the search of any non-public portion of his barbershop/store by defendant Groneman was an "unreasonable" search; (3) that the defendants Groneman and Lessard proved that they had probable cause to arrest the plaintiff Green on May 15, 2004; and (4) that the plaintiff did not prove that his arrest on May 15, 2004 was the result of "deliberate indifference" on the part of the town of Riverhead Police Department in failing to properly train its police officers with regard to the investigation and arrest of suspects.

After carefully listening to the Court's charge, the jury retired to commence deliberations. The jury submitted no questions indicating confusion or misapprehension. The jury submitted no request for clarification or conveyed any indication that it was experiencing difficulty in arriving at a decision. *Beyar v. City of New York*, No. 04CV3765, 2007 WL 1959010, at *5 (E.D.N.Y. June 29, 2007) ("The more reasonable inference drawn from a lack of questions from the jury is that the jury did comprehend the instructions and was not confused."). Further, nothing about the verdict is inconsistent or indicative of juror confusion. Accordingly, the plaintiff's motion for a new trial on this ground is denied.

In addition, the plaintiff seeks a new trial on the ground that the verdict was against the weight of the evidence.

"A motion for a new trial ordinarily should not be granted unless the trial Court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." *Tesser v. Board of Education*, 370 F.3d 314, 320 (2d Cir.2004); *see also Armstrong v. Brookdale University Hospital*, 425 F.3d 126, 133 (2d Cir.2005). A less stringent standard applies to a motion for a new trial than for judgment as a matter of law pursuant to Rule 50. *See Manley v. AmBase Corp.*, 337 F.3d 237, 246 (2d Cir.2003) ("[A] district court may grant a new trial even where there is substantial evidence to support the jury's verdict if the court is convinced that the verdict was manifestly erroneous." (internal quotations and citations omitted)). In *DLC Management Corp. v. Town of Hyde Park*, 163 F.3d 124, 133 (2d Cir.1998), the court set forth the standard as follows:

> The standards governing a district court's consideration of a Rule 59 motion for a new trial on the grounds that the verdict was against the weight of the evidence differs in two significant ways from the standards governing a Rule 50 motion for judgment as a matter of law. Unlike judgment as a matter of law, a new trial may be granted even if there is substantial evidence supporting the jury's verdict. Moreover, a trial judge is free to weigh the evidence himself, and need not view it in the light most favorable to the verdict winner. A court considering a Rule 59 motion for a new trial must bear in mind, however, that the court should only grant such a motion when the jury's verdict is "egregious." Accordingly, a court should rarely disturb a jury's evaluation of a witness's credibility.

*DLC Management Corp.*, 163 F.3d at 133 (internal citations omitted); *see also Metromedia Co. v. Fugazy*, 983 F.2d 350, 363 (2d Cir.1992).

■ Accordingly, it is appropriate to grant a new trial where the jury's verdict is against the weight of the evidence or otherwise manifestly erroneous. *Manley*, 337 F.3d at 245.

### A. As to the plaintiff's false arrest cause of action

■ The plaintiff contends that after being charged that a warrantless arrest is presumptively unlawful, the jury erred in finding in favor of the defendants where they failed to establish probable cause for the plaintiff's arrest. The plaintiff cites Groneman's failure to testify and Lessard's failure to articulate his probable cause basis for arresting the plaintiff. Further, plaintiff contends that Lessard stated that the plaintiff was not handcuffed to arrest him, but rather for the purpose of conducting an investigatory show up identification procedure. Accordingly, the plaintiff contends that his physical detention was clearly premature.

The plaintiff raises no objection to the charge administered to the jury in this case. On the issue of false arrest, the jury was charged that when the plaintiff was handcuffed and placed in the police car, he was under arrest. The jury was further instructed that the question of whether the warrantless arrest of the plaintiff was lawful centered on whether Officer Groneman and Sergeant Lessard acted with the requisite probable cause to believe that the plaintiff had committed the crimes of menacing in the second degree and/or reckless endangerment in the second degree. Further, the jury was informed that the burden of proof was on the defendants to prove, by a preponderance of the evidence, that they had probable cause for believing that a crime had been committed by the plaintiff.

The jury was also instructed that probable cause exists when an officer has knowledge of or reasonably trustworthy information regarding facts and circumstances sufficient to warrant a prudent police officer in believing that a crime had been committed and that the person arrested committed the crime. The jury was instructed that the totality of the circumstances should be viewed from the vantage point of a prudent, reasonable, cautious police officer on the scene at the time of the arrest.

Finally, the jury was instructed as to the elements of the crimes involved, menacing in the second degree and reckless endangerment in the second degree. The jury was told that if there was probable cause to arrest the plaintiff for either charge, the arrest was lawful and verdict should be rendered in favor of the defendants. However, if there was no probable cause to arrest the plaintiff for either charge, the verdict should be rendered in favor of the plaintiff against Groneman and Lessard.

Prior to trial, the parties stipulated to the following facts, which were relayed to the jury at the close of the plaintiff's case. On the morning of May 15, 2004, the Riverhead police department received 911 calls reporting a man with a gun chasing another man on Melene Street and that a shot was fired. The man with the gun was described as a black male with dreadlocks. It was also reported that a black car was involved. A second call stated that the man with the gun was wearing a white shirt. (Tr. 260:18–261:1).

At a deposition, a portion of which was read to the jury during the trial, Sergeant Lessard testified that he recalled receiving a description of the suspect vehicle involved in the weapon discharge, which he recalled as a "four-door sedan." (Tr. 264:14–25). He testified that he observed a gray colored Honda, four-door sedan operated by a subject with a white T-shirt and Rastafarian-type hair. (Tr. 266:3–11). Sergeant Lessard further testified at his

deposition that another officer informed him that a witness to the weapons discharge "stated that the person who had the gun was . . . a black male with a white T-shirt, Rastafarian type hair, and . . . left the area in a gray Honda, four door sedan, with a for sale sign on the back window." (Tr. 287:14–19).

At trial, Sergeant Lessard testified that initial calls following the weapons discharge described involvement of a possible dark colored sedan, possibly a Mustang and possibly a Riverhead taxi involved. (Tr. 324:11–16). The initial calls described a suspect with dreadlocks or Rastafarian-type hair. (Tr. 324:20–22). Sergeant Lessard stated that after these initial calls came in, he responded to the vicinity, though not the exact location of the shooting. (Tr. 326:3–20). A later transmission described the vehicle as a blue Nissan Maxima, and the suspect as a black male with dark-colored pants, and a white T-shirt, with a Rastafarian type hair style. (Tr. 327:3–11). As Sergeant Lessard was driving at the intersection of Northville Turnpike and Doctor's Path, he was searching for suspects involved in the crime. (Tr. 327:17–23). Driving in the opposite direction, he observed a gray Honda, with an operator who fit the description of the suspect that was being sought. (Tr. 328:3–5). Sergeant Lessard proceeded to turn into a U-turn and began following the vehicle. (Tr. 328:10–22). Sergeant Lessard testified that the area where he first saw the gray Honda was less than a mile from Melene street, where the shooting occurred. (Tr. 330:2–7). Further, on cross-examination, Sergeant Lessard acknowledged that he first observed the plaintiff's vehicle heading toward the direction of the crime scene, rather than away from it. (Tr. 434–35).

After retrieving the registration information for the vehicle, Sergeant Lessard proceeded to Melene street where the crime occurred. (Tr. 332:2–5). Once at the scene, Sergeant Lessard was informed by another officer that "the vehicle used in the commission of the crime possibly the subject fled in a gray colored Honda Civic with a for sale sign in the back left corner rear window," which information was corroborated by an eyewitness to the shooting. (Tr. 332:13–17; 333:16–19). Sergeant Lessard then proceeded back to Main Street to attempt to locate the vehicle that he had observed earlier. (Tr. 334:12–15).

On cross-examination, Sergeant Lessard conceded that shortly after receiving a transmission that the getaway vehicle was a blue Nissan, he observed the plaintiff driving in a gray Honda. (Tr. 367:21–368:14). He stated that he followed the car because the individual fit the suspect description, even though the car did not fit any of the initial descriptions. (Tr. 371:9–13). In addition, Sergeant Lessard conceded that the written witness statement taken by another officer from the eyewitness refers to a gray Honda being involved in the shooting incident, but does not state that the shooter was either in the vehicle or later got into the vehicle. (Tr. 403–04).

The plaintiff testified that on May 15, 2004, he was driving a light gray 1988 Honda Civic with a for sale sign on it. (Tr. 79:19–23). The plaintiff also testified that after the police arrived at his shop and escorted him outside, Sergeant Lessard told the plaintiff that he was being disruptive and told the plaintiff that they were going to have to put him in the police car, so that they could perform their job. (Tr. 97:13–16). The plaintiff stated that he was not shouting, using profanities, or flailing about, but was nevertheless asked to sit in a police car. When he declined, he was handcuffed and placed in the vehicle. (Tr. 97:25–98:23, 100:15–19). Thereafter, the police removed the handcuffs

and placed the plaintiff back into the police car for another 15 minutes, while the police conducted identification procedures with two witnesses to the shooting. (Tr. 108:16–109:14).

Sergeant Lessard testified that he advised the plaintiff that they were investigating a shooting and that they would have one or two witnesses come down and look at him to see if he was involved. (Tr. 340:18–21). Sergeant Lessard said that Green was a little bit agitated, he wasn't that cooperative, and he wasn't listening or following instructions. (Tr. 341:13–22). When asked to get into a police vehicle, the plaintiff stated that he would only do so if the police placed him in handcuffs.

The jury found that the defendants established probable cause to arrest the plaintiff based on a totality of the circumstances and after considering the above testimony. The Court finds that the jury's determination was not against the weight of the credible evidence. *See People v. Alston,* 279 A.D.2d 583, 584, 719 N.Y.S.2d 679 (2d Cir.2001) (upholding probable cause finding where the evidence established the reliability of the witness and his information and the defendant fit the description of one of the perpetrators including the fact that he was in a white truck with the word "Salem" on its sides); *see also People v. Douglas,* 138 A.D.2d 731, 526 N.Y.S.2d 544 (2d Dep't 1988) (" '[A]s a general rule, information provided by an identified citizen accusing another individual of the commission of a specific crime is sufficient to provide the police with probable cause to arrest.' ") (quoting *People v. Sanders,* 79 A.D.2d 688, 689, 433 N.Y.S.2d 854 (2d Dep't 1980)).

B. *As to the cause of action alleging wrongful search of the plaintiff's person by defendant Groneman*

The plaintiff contends that the jury erred in finding in favor of defendant Groneman because after having been charged that a warrantless search is presumptively unconstitutional and unlawful, it was Groneman's burden to prove that the search was justified. The plaintiff notes that Groneman never testified in his own defense.

On the issue of unreasonable search by Groneman, the jury was instructed that a search conducted without a warrant, such as the search of Green's person outside of the barber-shop, is presumptively unlawful. The jury was informed that a police officer is permitted to pat down an individual if the officer can point to specific facts that, together with natural inferences, would lead a police officer of reasonable caution to believe that a brief pat down his warranted, and that a police officer may take steps to assure himself that the person with whom his is involved is not armed with a weapon.

The jury was further charged that the search must be carried out in a reasonable manner. The Court instructed the jury that if they believed the testimony of the plaintiff that he was subjected to the search of his person in the street in the manner that he described, without reasonable suspicion to believe that he had a weapon, they must return a verdict in favor of the plaintiff. On the other hand, the jury was instructed that if it found that Officer Groneman had a reasonable suspicion to believe that the plaintiff had a weapon, it must render a verdict in favor of Groneman.

The plaintiff testified that after he arrived at his store on May 15, 2004 and placed a customer in his barber's chair, he was approached by a plain clothes Riverhead detective, who informed the plaintiff that he was listed as a suspect to a shooting in a section of Riverhead known as the Greens. (Tr. 81:5–7). The plaintiff testified that at that time approximately four

officers entered his store and exhibited their badges. (Tr. 81:24–82–12).

The plaintiff stated that the officers thoroughly frisked him inside the store and when he inquired whether he was under arrest or needed to call a lawyer, they responded that they were merely investigating. (Tr. 84:8–11). The plaintiff testified that the officers "asked [him] where was the gun and who was with me." (Tr. 87:18–21). Following that first frisk, the plaintiff testified that the police asked him to step outside and he complied without being belligerent or oppositional. (Tr. 86:5–10). The plaintiff was instructed to place his hands on a Riverhead police vehicle and he was frisked a second time by Officer Groneman. (Tr. 92–94:19–22, 147:7–12).

Joseph L. Minter testified that he is a barber working in the plaintiff's shop. (Tr. 192:20–193:7). Minter testified that he was working on the morning of May 15, 2004, when he observed two police officers enter the shop, and walk around the shop looking behind sales counters and in the bathroom. (Tr. 195:21–196:3, 198:2–8). Minter further testified that the officers did not identify themselves, but were uniformed officers. (Tr. 199:12–18). Minter stated that he did not observe the police officers frisk Green inside of the shop. (Tr. 226:15–19).

Jubell Earl Myrick testified that he worked in the barbershop on the day in question. (Tr. 233:4–19). Myrick testified that he observed four officers enter the shop through the front door, and did not observe any enter through the back. (Tr. 236:17–25). On cross-examination, Myrick stated that he did not observe the police officers have any physical contact with the plaintiff inside the shop. (Tr. 247:16–19).

Finally, Sergeant Lessard testified that he observed Officer Groneman do a cursory patdown search of the plaintiff outside of the shop, which, according to Lessard, is a routine search based on the nature of the crime under investigation. (Tr. 341:23–342:10).

The defendants contend, and the Court agrees, that inasmuch as the jury found that probable cause to arrest for menacing in the second degree and/or reckless endangerment existed, the officers had a reasonable suspicion that the plaintiff was in possession of a firearm and could pose a danger to the officers. "The relevant inquiry [with respect to authority to frisk] is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger, and each case must be decided on its own facts." *See People v. Crawford,* 256 A.D.2d 719, 682 N.Y.S.2d 253 (3d Dep't 1998) (internal quotations and citations omitted) (noting that "[i]t has long been recognized that permitting police to take reasonable precautions for their safety is an essential corollary to the exercise of their powers and responsibilities, and that under certain circumstances a limited frisk for weapons is reasonable and constitutionally permissible"). The jury's finding that defendant Groneman's search of plaintiff's person was reasonable was not against the weight of the evidence or manifestly erroneous.

*C.  As to the cause of action alleging wrongful search of plaintiff's business premises by defendant Groneman*

█  The plaintiff further contends that because the search of the plaintiff's business premises was conducted without a warrant, it too was presumptively unconstitutional. It was Groneman's burden to establish either that he did not participate in the search or had a reasonable justification in participating. The plaintiff notes again that Groneman did not testify on this, or any issue. Further, the plaintiff

points out that Officer Lessard testified to Groneman's presence in the plaintiff's shop and to eyewitness testimony that all of the officers searched non-public areas of the plaintiff's shop. Finally, plaintiff contends that the officers failed to identify the items searched for or their reasons to believe that the items would be located in the place searched.

On the other hand, the defendants contend that the limited search of the plaintiff's barber shop was reasonable and justified under the circumstances and note that none of the plaintiff's witnesses identified a Riverhead police officer as having conducted a search beyond the public areas of the plaintiff's shop.

The Court instructed the jury that although certain exceptions exist, searches that are conducted without first having obtained a warrant from a judicial officer are presumptively invalid. However, the jury was also charged, that a search of the public portion of a barbershop/store cannot be the basis for a Section 1983 cause of action. Instead, only what the plaintiff seeks to preserve as private, even in a public store, is constitutionally protected. The jury was instructed that only if it found that defendant Groneman entered the private portions of the barbershop/store without reasonable suspicion to believe that a weapon was secreted in such private areas, could it find in favor of the plaintiff on this cause of action.

Sergeant Lessard testified that he observed Officer Groneman and an unnamed Southampton patrol officer enter the plaintiff's shop. (Tr. 268:25–269:1).

The plaintiff testified that the back of his store had an entrance, which was maintained as a private entrance, but which he had opened on the day in question to allow air to circulate in his store. (Tr. 74:18–25, 75:10–16). Green further testified that there was a backroom to his shop, that was used for storage of various items sold in the shop. (Tr. 75:21–76:3). This area was also closed to the public. (Tr. 76:4–18). On cross-examination, the plaintiff explained that there is usually a screen dividing the front of the store from the storage area, but after he opened the back door on that day, he did not restore the screen to its usual position. (Tr. 157:4–12). The plaintiff also testified that from where he sat in the police car after being detained, he could observe officers entering and exiting the shop through the back door. (Tr. 104:1–11, 106:22–107:5).

On cross-examination, Joseph Minter testified that he observed officers from both Riverhead and Southampton present in the store, and the officer who stepped behind the sales counter was from the Town of Southampton. (Tr. 220:21–23). Minter testified that the officer that came in through the rear of the store was also from Southampton. (Tr. 223:2–14). Minter stated that he did not observe officers from the Town of Riverhead Police Department looking behind any of the counters, in the rear of the store or through any cabinets of drawers in the store. (Tr. 225:4–14).

Jubell Myrick testified that he observed two officers looking around the shop, one behind the sales counter and the other in the back room. (Tr. 238:5–12, 240–41). Myrick testified that he did not know with what town the police officers who had looked through the store were affiliated. (Tr. 244:1–18).

Wayne Street testified that he has been a customer of Green's for approximately ten years and was present on the day in question. (Tr. 252–253:15). He testified that on that day, he was waiting to have his hair cut when three or four officers entered the shop. (Tr. 253:20–22). Street testified that the police officers were looking through the clothing and compact discs in the retail area of the shop. (Tr. 257:10–

14). On cross-examination, Street stated that he did not recall the patch or insignia of the officer who was looking behind the counter. (Tr. 259:11–260:4).

Paul Seymore testified that he was present in the plaintiff's shop on May 15, 2004 and he observed a uniformed police officer enter the shop and search around, on top of, and underneath items in the store. (Tr. 292:25–293:14). He also observed an officer enter the back room of the shop. (Tr. 294:2–5). Seymore testified that he believed the police officer to be from the Southampton police department because he arrived in a Southampton police vehicle. (Tr. 301:6–13).

The jury found that the search of the plaintiff's shop was not unreasonable. In light of the varied and inconsistent testimony as to the extent of the search in the plaintiff's shop as well as the witnesses' inability to determine the identity or affiliation of the officers conducting the search, the Court finds that this determination was not against the weight of the evidence or manifestly erroneous.

D. *As to plaintiff's Monell claim for municipal liability for failure to adequately train its police personnel*

As to this cause of action, the jury was instructed that the Town of Riverhead could not be held liable for an alleged deprivation of the plaintiff's constitutional rights simply because it employed Police Officer Groneman and Sergeant Lessard. The Court explained that the Town could only be held liable for failure to properly train its police officers as to the proper manner of investigating, searching and arresting persons accused of a crime.

In particular, the Court charged the jury that to prevail on this cause of action, the plaintiff must prove the following elements by a preponderance of the evidence:

(1) that the training program of the Town of Riverhead was inadequate to train its police officers to carry out their duties with regard to investigation, search and arrest;

(2) that the need for more training or different training in this regard was so obvious, and the inadequacy so likely to result in the violation of a person's constitutional rights, that the policy makers of the Town of Riverhead can reasonably be said to have been "deliberately indifferent" to the need for such training; and

(3) that the failure to provide such proper training was a cause of the plaintiff being allegedly wrongfully searched and arrested on May 15, 2004.

This concept was reiterated and the jury was instructed that it must decide, based upon all of the evidence, whether the plaintiff established that: (1) the Town of Riverhead's training of its police officers was inadequate; (2) if it was inadequate, whether it was the result of the Town's deliberate indifference to the rights of persons with whom the police often come in contact; and (3) if the Town was deliberately indifferent in its training, whether that deliberate indifference was a proximate cause of the wrongful search and/or arrest of the plaintiff.

The plaintiff points to Lessard's testimony that he had not received in-service training from the Town or the police force regarding search, seizure, and arrests within five years preceding the plaintiff's arrest. Further, Lessard stated that the Town had no requirements or procedures whereby the police were mandated to receive continued training on these subjects.

In light of the jury's findings that the plaintiff was not subjected to a wrongful search or arrest, it follows that the jury's verdict on the municipal liability cause of action was not against the weight of the

evidence. Indeed, after finding no violation of the plaintiff's constitutional rights, this was the only reasonable conclusion that the jury could reach.

### 2. As to the Plaintiff's Motion for Judgment as a Matter of Law

■ In considering a Rule 50 motion, the court must decide whether " 'the evidence is such that, without weighing the credibility of witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [people] could have reached.' " *This Is Me, Inc. v. Taylor,* 157 F.3d 139, 142 (2d Cir.1998) (quoting *Cruz v. Local Union No. 3, Int'l Bd. of Elec. Workers,* 34 F.3d 1148, 1154–55 (2d Cir. 1994)). "Weakness of the evidence does not justify judgment as a matter of law; as in the case of a grant of summary judgment, the evidence must be such that 'a reasonable juror would have been compelled to accept the view of the moving party.' " *Taylor,* 157 F.3d at 142 (quoting *Piesco v. Koch,* 12 F.3d 332, 343 (2d Cir. 1993)).

> Rule 50(b) provides:
> If, for any reason, the court does not grant a motion for judgment as a matter of law made at the close of all the evidence, the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. The movant may renew its request for judgment as a matter of law. . . .

For the reasons set forth above denying the plaintiff's motion for a new trial, the Court finds that the plaintiff is not entitled to judgment as a matter of law.

### III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED,** that the plaintiff's motion pursuant to Fed.R.Civ.P. 59 for a new trial is denied; and it is further

**ORDERED,** that the plaintiff's motion pursuant to Fed.R.Civ.P. 50 for judgment as a matter of law is denied.

**SO ORDERED.**